Frank E. Scherkenbach (CA #142549)
*scherkenbach@fr.com*
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA  02210-1878
Telephone: (617) 542-5070
Facsimile:  (617) 542-8906

Michael R. Headley (CA SBN 220834)
*headley@fr.com*
Neil A. Warren (CA SBN 272770)
*warren@fr.com*
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA  94063
Telephone: (650) 839-5070
Facsimile:  (650) 839-5071

Attorneys for Defendant
POWER INTEGRATIONS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| OPTICURRENT, LLC,<br><br>             Plaintiff,<br><br>        v.<br><br>POWER INTEGRATIONS, INC.,<br><br>             Defendants. | Case No. 3:17-cv-03597-WHO<br><br>**POWER INTEGRATIONS' MOTIONS *IN LIMINE*** |

1  Defendant Power Integrations, Inc. ("PI") files these Motions *in limine* requesting that the
2  Court enter an Order instructing Plaintiff Opticurrent, LLC, its counsel, representatives, and any
3  witnesses tendered by Opticurrent (whether live or by deposition) to refrain from referring to, in any
4  way, either directly or indirectly, within the hearing of the jury, any matters which are the subject
5  of these motions without first approaching the bench outside the hearing of the jurors and obtaining
6  a favorable ruling from the Court regarding the admissibility and relevance of the matters sought to
7  be presented to the jury.

8  PI further asks this Court to enter an order: (1) instructing Opticurrent's counsel to discuss
9  these Motions *in limine* with all of Opticurrent's witnesses before they testify; and (2) that such
10 information be redacted from otherwise admissible evidence contained in documents, papers and
11 things used by Opticurrent as exhibits and/or evidence in this case.

12 **POWER INTEGRATIONS' MOTIONS *IN LIMINE***

13 **MIL #1: Other Legal Proceedings.**  This motion seeks to preclude reference to other
14 litigation and legal proceedings, including without limitation the vacated *Fairchild* damages
15 verdict referenced in Mr. Evans's damages report, PI's victories in other cases, and any IRS
16 audits.  The prejudice and attendant confusion from the introduction of such matters far outweighs
17 any potential probative value of the facts and circumstances surrounding unrelated legal
18 proceedings involving either party, particularly given how short and focused this trial will be.

19 Courts routinely exclude evidence of other legal proceedings in jury trials because of the
20 potential for undue prejudice, confusion, and wasted time.  For example, the *Fairchild* verdict that
21 Opticurrent seeks to reference would require a trial-within-a-trial in which PI would need to
22 explain why Fairchild's damages theory was flawed.  This District recently excluded reliance on a
23 prior judgment for this reason.  *Sentius Int'l, LLC v. Microsoft Corp.*, 2015 WL 451950, at *7
24 (N.D. Cal. 2015) (excluding damages theory based on a prior judgment: "admission of the *Lucent*
25 JMOL will almost certainly cause Microsoft to waste time explaining and re-litigating the issues
26 and circumstances involved in the *Lucent* dispute, confuse the jury about the facts and
27 circumstances of that dispute and prejudice the jury by suggesting that Microsoft is a serial
28 infringer that frequently is found liable for damages for patent infringement"); *see also ICU*

*Medical, Inc. v. RyMed Technologies, Inc.*, 752 F. Supp. 2d 486, 490-91 (D. Del. 2010) (excluding evidence relating to a prior litigation that resulted in invalidating patent claims from the same patent because it "would introduce irrelevant evidence and would risk unduly prejudicing ICU."); *Rambus v. Infineon Technologies AG,* 222 F.R.D. 101, 109-110 (E.D. Va. 2004) (excluding FTC decision under Rule 403 because of "the danger of unfair prejudice and its tendency to mislead the jury, confuse the issues, and waste time").  In addition, the vacated *Fairchild* verdict is not relevant and should be excluded for the additional reasons set forth in PI's *Daubert* motion.

Other litigations and legal proceedings should likewise be excluded.  Opticurrent's own motion *in limine* #2 also seeks to exclude mention of other legal proceedings.  PI agrees, provided that this rule applies to both parties.

**MIL #2: Intra-Company Pricing.**  This motion seeks to preclude reference to or use of PI's intra-company transfer pricing agreements.  As previously briefed in connection with PI's *Daubert* motion and Opticurrent's discovery motion, PI's agreements with its subsidiary are not relevant.  PI's 2003 transfer pricing agreement with its subsidiary included rights to at least 75 patents and other intellectual property.  (*See* Dkt. No. 155-1 at 1.11; Dkt. No. 155-2.)  The agreement also gave PI's subsidiary *international* rights to sell PI's products, but no license to sell in the United States.  (Dkt. No. 155-1 at 1.17 ("'Territory' shall mean all countries outside North, Central, and South America.")  As such, the agreements shed no light on the value of a single, uncommercialized patent in the U.S., and there is nothing in the record that would permit Opticurrent to apportion out the value of just one patent.  This District has excluded such licenses under similar circumstances.  *Sentius Int'l, LLC v. Microsoft Corp.*, 2015 WL 451950, at *8 (N.D. Cal. 2015) (excluding international portfolio license as not comparable to U.S. license for two patents); *see also Telebuyer, LLC v. Amazon.com, Inc.*, previously filed as Dkt. No. 160-1, at 3 (licenses granting "wholesale permission for Amazon's affiliates to use all of Amazon's intellectual property" held not relevant to hypothetical negotiation).

In addition, PI's intra-company agreements are not the subject of any expert report, and this Court tentatively indicated at the most recent hearing that it was inclined to deny Opticurrent's discovery motions.  (*See* 12/5/2018 Hearing Tr. at 4:15-19.)

PI's intra-company transfer pricing agreements should likewise be excluded.

**MIL #3: Scope of Expert Testimony.**  This motion seeks to preclude Opticurrent's experts from testifying beyond the scope of the reports served during the expert discovery period in this case.  In particular, pursuant to Rules 26 and 37, Opticurrent should not be permitted to introduce purported opinions of Dr. Zane that are not spelled out in Dr. Zane's expert reports (including without limitation any discussions with Mr. Evans regarding Energy Star and the purported value of the asserted claim of the patent-in-suit).  Nor should Dr. Zane or Mr. Evans be permitted to rely on the material set forth in their declarations submitted in the context of the recent *Daubert* and Summary Judgment briefing, as those materials were not disclosed in a timely manner in this case.  The Court indicated during the recent *Daubert*/summary judgment hearing that it was inclined to exclude them.  (12/5/2018 Hearing Tr. at 5:4-9; *see also id*. at 3:2-7.)

Opticurrent's own motion *in limine* #2 also seeks to limit experts to their reports.  PI agrees, provided that this rule applies to both parties.

**MIL #4: Total Revenues and Profits.**  This motion seeks to preclude any reference to PI's overall revenues and profits (including any reference to PI's total revenues and profits for the accused products), or any reliance on PI's full per-unit sales price or Average Sales Price ("ASP").  These data points are not part of Opticurrent's damages expert Larry Evans's damages calculations, which simply multiply the number of purportedly infringing units by 1.5 cents *per unit*.  (*See* Dkt. No. 143-2 at ¶ 63.)  It would be improper for Opticurrent to introduce PI's overall revenue and profitability data at trial because they bear no relationship to any damages theory disclosed by Opticurrent or any apportioned value related to the patent-in-suit.  *See, e.g., VirnetX, Inc. v Cisco Systems, Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014) ("a patentee must *in every case* give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative" (emphasis added)*, quoting Garretson v. Clark*, 111 U.S. 120, 121 (1884)).

In addition to not being disclosed as relevant data points for purposes of the calculations of damages in this case, those data points would skew the Jury's damages horizon and thus would be

more prejudicial than probative, especially since Opticurrent does not seek to rely upon the Entire Market Value Rule ("EMVR").  The Federal Circuit explained why admission of a defendants' total revenue was improper under such circumstances in *Uniloc USA, Inc. v. Microsoft Corp.*:

> This case provides a good example of the danger of admitting consideration of the entire market value of the accused where the patented component does not create the basis for customer demand.  As the district court aptly noted, "[t]he $19 billion cat was never put back into the bag even by Microsoft's cross-examination of Mr. Gemini and re-direct of Mr. Napper, and in spite of a final instruction that the jury may not award damages based on Microsoft's entire revenue from all the accused products in the case." *Uniloc II*, 640 F. Supp. 2d at 185.  This is unsurprising.  The disclosure that a company has made $19 billion dollars in revenue from an infringing product cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue.
>
> * * *
>
> This is in clear derogation of the entire market value rule, because the entire market value of the accused products has not been shown to be derived from the patented contribution.

632 F.3d 1292, 1320-21 (Fed. Cir. 2011) (affirming order vacating jury verdict on this ground).

PI's revenues should likewise be excluded.

Dated:  December 21, 2018  FISH & RICHARDSON P.C.


By:  */s/ Michael R. Headley*
    Michael R. Headley

Attorneys for Defendant
POWER INTEGRATIONS, INC.