Pages 1-11

                    UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF CALIFORNIA
                      SAN FRANCISCO DIVISION


OPTICURRENT, LLC,                ) Case No.  17-cv-03597-WHO
                                 )
              Plaintiff,         ) San Francisco, California
                                 ) Tuesday, January 22, 2019
       vs.                       )
                                 )
POWER INTEGRATIONS, INC.,        )
et al.,                          )
                                 )
              Defendants.        )
_____ )




 TRANSCRIPT OF TELEPHONIC PRETRIAL CONFERENCE AND MOTION HEARING
          BEFORE THE HONORABLE WILLIAM H. ORRICK
                   UNITED STATES JUDGE




APPEARANCES:

For Plaintiff:              JONATHAN T. SUDER, ESQ.
                           CORBY R. VOWELL, ESQ.
                           DAVE R. GUNTER, ESQ.
                           Friedman, Suder & Cooke
                           604 East 4th Street, Suite 200
                           Fort Worth, Texas 76102
                           (817) 334-0400

For Defendants:            MICHAEL R. HEADLEY, ESQ.
                           Fish & Richardson P.C.
                           500 Arguello Street, Suite 500
                           Redwood City, California 94063
                           (650) 839-5070




Proceedings recorded by electronic sound recording; transcript
produced by transcription service.

2

APPEARANCES:  (Cont'd.)

For Defendants:                JOHN W. THORNBURGH, ESQ.
                               Fish & Richardson P.C.
                               12390 El Camino Real
                               San Diego, California 92130
                               (858) 678-5070

Also Present for Power         CLIFFORD WALKER
Integrations, Inc.:

Transcription Service:         Peggy Schuerger
                               Ad Hoc Reporting
                               2220 Otay Lakes Road
                               Suite 502-85
                               Chula Vista, California 91915
                               (619) 236-9325

3

SAN FRANCISCO, CALIFORNIA TUESDAY, JANUARY 22, 2019  2:11 P.M.

--oOo--

THE CLERK:  Calling civil matter 17-3597, Opticurrent, LLC v. Power Integrations, Inc., et al.  Mr. Suder, if you would introduce the Plaintiff team on the record.

MR. SUDER:  Yes.

THE CLERK:  And then, Mr. Headley, if you'll follow with Defense appearances.

MR. SUDER:  Yes.  Thank you.  Good afternoon, Your Honor.  This is John Suder from Fort Worth and with me is Corby Vowell and Dave Gunter.  Mr. Hudnell is traveling, so he will not be participating.

THE COURT:  Great.  Good afternoon.

MR. HEADLEY:  Good afternoon, Your Honor.  On the Defense counsel, Michael Headley from Fish & Richardson.  Also with me is John Thornburgh, also with Fish, and Cliff Walker from Power Integrations.

THE COURT:  Great.  All right.  Good afternoon.  Couple of things.  So I want to deal with the motions that have been filed and then I'm going to talk a little bit about the trial.

The -- on the preliminary instruction motion, I would deny the Plaintiff's motion to amend.  I will give Power Integrations' proposed -- or the Court will give Power Integrations' Proposed Number 15, won't give Opticurrent's Proposed Number 16, will give Power Integrations' Number 17, and not give Opticurrent's 16A.  To

4

try to do the damages instruction now, not only is it unnecessary and I just don't do it as a regular matter, but I think the way that the Plaintiff's evidence will play out at trial may make some difference in the way that the instruction is given.  So that's my -- that's my ruling on that.

With respect to the 1006 summaries, I haven't seen them and, Mr. Suder, I think it would be helpful if you would just file them on ECF when we get off the phone.  I'm inclined -- or you can tell me where they are and I'll dig them up, but I couldn't identify them.

But I'm inclined to grant the Plaintiff's motion with respect to that.  It seems to me that, at least as they're described, they're a voluminous writing.  They're not in dispute.  And if they're accurate, there may be a number of different ways of dealing with them.  But if the parties can't agree on a sponsoring witness -- I'm not sure that a sponsoring witness is necessary under the circumstances of this case where I have excluded the expert who prepared them -- but they are apparently prepared in an accurate fashion.

The Plaintiff's reply describes how the -- in general, how their damages theory is going to play out in court.  And so subject to rulings at trial or in post-trial briefing, that's my inclination.

So with respect to either the preliminary instructions or the 1006 summaries, I'll hear first from Mr. Suder.

5

MR. SUDER:  Yes.  Thank you, Your Honor.  This is John Suder for the record.  With regard to the instructions, I have no comment.  With the instructions, we will file them as soon as we hang up.  Should we file them under seal?  That's my only -- I don't know if I want to file the protective order.

THE COURT:  Yeah.  If they're still -- if they have always been under seal, then, yes, please file them under seal.

MR. SUDER:  And, Your Honor, the only other issue -- I would hope that there is not need for a sponsoring witness, but right now Mr. Brunell has not seen them, has not had access to them, and I'm just concerned that if the Court wants a sponsoring witness and wants Mr. Brunell, that he would have to come during trial for him to -- to affirm the calculations.

THE COURT:  Right.  Well, and that I think -- let me hear from -- from Mr. Headley or whoever's going to argue on his side.  But I think the -- that is something that they need to consider.  One way or another, it would appear to me that it's gonna be admissible.

But, Mr. Headley, why don't you go ahead.

MR. THORNBURGH:  Thank you, Your Honor.  This is John Thornburgh.

THE COURT:  Okay.

MR. THORNBURGH:  I'm going to address this issue.

THE COURT:  Great.

MR. THORNBURGH:  Thank you.  So the summaries are not

6

really the main point of contention.  You know, we agree that they're accurate.  We could stipulate to their accuracy and they could be admitted without a witness.  The problem is we object to the admission of PI's total revenue on substantive grounds, you know, whether it's the voluminous data or the substance.

And we put some of that in our papers.  And then in response, we got the Plaintiff's reply which put forth an entirely new apportionment theory and a new -- a new way of looking at our revenue which had not been the Plaintiff's damages theory with Mr. Evans.  He was not looking at a percentage of our revenue.  It said he was looking at a -- you know, per unit wanted to have some (ph).

And, you know, we strongly object to the new theory for the reasons that we stated, that, you know, if they're going to use a percent of our entire accused revenue, that's the Entire Market Value Rule and they have not begun to -- it requires foundation that the, you know, asserted technology drives demand.

In their last brief, they put in a new theory that, you know, they said they don't have to apportion it, but that's -- but the heading is contrary to what the Court has previously ruled, but then they go on to say that they think that comparable agreements can be used to apportion and they cite some cases.  You know, this is the first time we've seen this and, you know, frankly, maybe there's more briefing.  But if Your Honor will permit, I can respond orally briefly here now.

You know, to ensure the existence of a technically comparable license doesn't, you know, by itself eliminate the need to consider apportionment in the Entire Market Value Rule.  In both *LaserDynamics* and *VernetX*, there were technically comparable licenses that were admitted, and yet the Federal Circuit in both cases held that you could not apply those rates to the entire accused revenue without further apportionment.

And Opticurrent has, you know, no apportionment, no theory of apportionment, has not identified any new theories of apportionment other than to take their rate and apply it directly to our revenue and maybe even increase it.

The cases that they cite, such as *Commonwealth* and *Ericsson*, are distinguishable.  They are not blank checks to say if you have a benchmark license, you don't need to worry about the Entire Market Value Rule.

In *Commonwealth*, the benchmark license was between the same parties or an industry group of similar parties.  And aside from the fact that Opticurrent had license -- the patent suit or a related patent to one of PI's competitors, like Fairchild.  You know, Fairchild's --

THE COURT:  Mr. Thornburgh -- Mr. Thornburgh, let me interrupt you because the motion was whether the 1006 summaries could be used.  And so the answer to that question is yes.  The more -- what you're arguing about is something that is different and I think that is going to have to play out at trial.

You filed a motion to preclude Mr. Evans from testifying. I agree with you. And -- but I also agreed with you that the Plaintiffs are entitled to put on a case with respect to damages. They have now laid out I think pretty clearly what it is that they want to do. If you want to strike their entire damages case, then -- then that's something that will be taken up at the time of trial. But on the issues before me, I think -- I think we've resolved them and you agreed that 1006 summaries could come in without a sponsoring witness, and so that's -- that's fine.

So --

MR. THORNBURGH: Your Honor, may we file something in writing before trial so that the Court has our full position on what is operating here?

THE COURT: Absolutely. I think the more -- I'm about to give you some information about all of this and I can give you pretty good timing on it.

I -- and the answer to your question is yes. But I told you the last time that we were together, I think, that I had a trial that is starting -- I have one that's starting on the 4th, which is going. And I have another one which is starting on the 18th, which is an older trial. The -- and so this case is -- your case is going to go out as scheduled and it's going to be -- the trial judge is going to be Judge Chen.

And so jury selection is going to be in Courtroom 5 on this floor on the 15th, as scheduled.

9

He is going to hold a final pretrial conference at 2:30 on February 11th, and I would suggest to you that -- let's see -- I think you ought to brief the damages issue and -- so if the Defendants want to file something on the damages by the -- a week from today, the 29th, and the Plaintiffs can respond on the 5th. That would give I think sufficient time for Judge Chen to take a look at that and -- and you can discuss it more at the -- at his pretrial conference.

MR. THORNBURGH:  Thank you.

THE COURT:  So the trial would then start on February 19th as -- as indicated.

So I am -- my role in this case will be over as soon as I rule on these two motions, and I have ruled on them and they'll be in the pretrial -- in the minute order coming out of this, but -- but then the case will be transferred for all purposes to Judge Chen.

MR. SUDER:  Your Honor, this is John Suder.  May I ask a question?

THE COURT:  Sure.

MR. SUDER:  With regard to how voir dire is conducted, strikes, all that, that will be for Judge Chen to tell us on the 11th, I assume?

THE COURT:  So Judge Chen, of course, will be able to throw everything I've done out the window if he wants to once he has the case.  I suspect that he will -- I know that he will hold

10

to the time limit that I gave you because -- because that mattered in his ability to try the case.  And -- and he will undoubtedly use whatever procedures he usually uses, but -- and I don't -- that, I don't know.  All I know is that -- is what I've told you up to this point is the way that the case would be tried and he'll make any other further determinations.

But don't refile all the motions that you filed because he's just going to reject them.

MR. THORNBURGH:  All right.  Your Honor, if for some reason your case on the 18th gets resolved, would you be taking the case back or should we say goodbye?

THE COURT:  No.  This is our -- this is our time to say goodbye.  I had the pretrial case on the 18th this morning at 9:00, which is why I was waiting to have this CMC afterwards, and that case is going to try.  There is no doubt that that case is going to try.

MR. SUDER:  Your Honor, one other question.  Sorry. This is John Suder again.  With regard -- you still want us to file the 1006 summaries with you under seal now so you can review them for purposes of your order?

THE COURT:  I think you should file -- you should file them under seal anyway so that Judge Chen can -- could look at them if he wanted to.  But it sounds -- the Defendants indicated that the issue isn't really the 1006 summaries.  It's the damages theory that they're concerned about.  So it's not going to hold up

11

my ruling on the minute order.

MR. SUDER:  Yes, sir.  We'll take care of that then.  Thank you.

THE COURT:  Okay.  All right.  Is there anything further from anybody that we ought to discuss before -- before your next conversation with Judge Chen?

MR. SUDER:  No, Your Honor.  Thank you.

THE COURT:  All right.  Anything from the Defense?

MR. HEADLEY:  No, Your Honor.  Thank you.

THE COURT:  All right.  Good luck to you both.

MR. SUDER:  Thank you.  Bye-bye.

MR. HEADLEY:  Thank you.

    (Proceedings adjourned at 2:26 p.m.)


        I, Peggy Schuerger, certify that the foregoing is a correct transcript from the official electronic sound recording provided to me of the proceedings in the above-entitled matter.


     /S/ Peggy Schuerger                    January 23, 2019
Signature of Approved Transcriber          Date


Peggy Schuerger
Typed or Printed Name
*Ad Hoc Reporting*
Approved Transcription Provider
for the U.S. District Court,
Northern District of California