Frank E. Scherkenbach (CA SBN 142549)
scherkenbach@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210-1878
Telephone: (617) 542-5070
Facsimile: (617) 542-8906

Michael R. Headley (CA SBN 220834)
headley@fr.com
Neil A. Warren (CA SBN 272770)
warren@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

John W. Thornburgh (CA SBN 154627)
thornburgh@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Attorneys for Defendant
POWER INTEGRATIONS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| OPTICURRENT, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>POWER INTEGRATIONS, INC.,<br><br>        Defendants. | Case No. 3:17-cv-03597-EMC<br><br>**POWER INTEGRATIONS' REPLY IN SUPPORT OF OBJECTIONS TO OPTICURRENT'S NEW DAMAGES THEORY**<br><br>DATE:   February 11, 2019<br>TIME:   2:30 p.m.<br>JUDGE:  Hon. Edward M. Chen |

Because Opticurrent's Responsive Brief in Support of Damages (Dkt. No. 217) misstates the history of this case in several important ways, and also misstates the law, PI files this reply.

### 1. An entitlement to damages is not the same as entitlement to <u>improper</u> damages.

PI has not changed its position from the Pretrial Conference. PI agrees that Opticurrent is entitled to damages if it proves infringement, and that damages do not require an expert. However, that *does not give Opticurrent license to ignore the rules* in its quest to obtain an eight-figure damages award. The Federal Circuit in recent years has reversed numerous damages verdicts that fail to tie damages to the actual value of a patented invention, and it has established rules to prevent such verdicts. Opticurrent may not ignore these rules just because Mr. Evans was excluded, or just because an improper theory is the only path to a large damages number. The law guarantees a patentee a reasonable royalty upon a finding of infringement; it does not guarantee a *large* royalty. *E.g.*, *Lindemann Maschinenfabrik*, 895 F.2d 1403, 1407-08 (Fed. Cir. 1990) (affirming $10,000 reasonable royalty award because patentee failed to provide sufficient evidence to support a greater award).). Moreover, just because Opticurrent has not put forward a permissible theory to date does not mean that PI seeks to preclude Opticurrent from offering any theory at all. The Court ordered, and PI concedes, that certain evidence relating to damages remains fair game, but that fact does not entitle Opticurrent to present or argue an improper damages theory. The patent-in-suit simply is not worth very much money under a proper damages theory.

### 2. Opticurrent is not correct about what damages theories it disclosed and when.

Much of what Opticurrent says about the parties' past positions, and the Court's past rulings, is distorted by ignoring what Opticurrent actually disclosed and when. The following are the most important details:

(a) The only damages theory advanced by its now-excluded expert Mr. Evans was 1.5 *cents per unit*, based on a now-excluded jury verdict in an unrelated case. (Dkt. No. 174 at 14, 18 (*Daubert* order dated December 21, 2018).)

(b) The first time that Opticurrent ever indicated that it would seek a percentage of PI's *revenue* was on January 15, 2019, after Mr. Evans was excluded. (Dkt. No. 198 (motion to admit

1   POWER INTEGRATIONS' REPLY IN SUPPORT OF OBJECTIONS
TO OPTICURRENT'S NEW DAMAGES THEORY
Case No. 3:17-cv-03597-EMC

revenue summaries).)  The next day, Opticurrent amended its interrogatory responses to reflect that new theory, for the first time.  (Dkt. No. 203-1.)

(c)  The first time that Opticurrent ever indicated that it would use the QBar license for a royalty rate was also on January 15, 2019, after Mr. Evans was excluded.  (Dkt. No. 198 (motion to admit revenue summaries).)  And again, Opticurrent amended its interrogatory responses the next day to reflect that reliance, for the first time.  (Dkt. No. 203-1.)  Previously, Opticurrent's expert Mr. Evans affirmatively stated "I did not rely on the QBAR license as evidence of an appropriate rate."  (Dkt. No. 151-9 at ¶ 24.)

(d)  The first time that Opticurrent ever indicated that it would seek to use the QBar license for *apportionment* was even later, on January 21, 2019, in response to PI's objections to Opticurrent's revenue summaries.  (Dkt. No. 206 at 8.)

(e)  The first time that Opticurrent disclosed its intent to seek a royalty of 4-5% was in its most recent filing, on February 5, 2019.  (Dkt. No. 217 at 6.)  While Opticurrent suggested something similar in mediation, settlement discussions do not count as discovery disclosures and may not be used in the litigation (including in the way Opticurrent is attempting to use them).

(f)  In its brief, Opticurrent makes the vague statement "Defendant itself is a party to a comparable license at a considerably higher rate (9.2%) than presented by the QBar license.  Defendant's license has been identified on the parties' joint exhibit list and relates to the accused products at issue in this litigation."  (Dkt. No. 217 at 5.)  This refers to PI's license to its subsidiary Power Integrations, Ltd.  But Opticurrent has never disclosed a damages theory based on PI's license to its own international subsidiary.  And the Court has repeatedly denied Opticurrent's attempt to rely upon on this license, both because it is not comparable and because it was not timely disclosed.  (Dkt. No. 174 at 27-29 (denying Opticurrent's request to supplement Evans report with this new license); Dkt. No. 186 at (denying reconsideration).)[1]

---

[1] PI's agreement with its subsidiary is in no way relevant to this case, as the Court held.  PI's 2003 transfer pricing agreement with its subsidiary included rights to at least 75 patents and other intellectual property, and it was part of a larger suite of agreements with PI's international subsidiaries.  (*See* Dkt. No. 155-1 at 1.11; Dkt. No. 155-2.)  The agreement also gave PI's subsidiary *international* rights to sell PI's products, but no license to sell in the United States.  (Dkt. No. 155-1 at 1.17 ("'Territory' shall mean all countries outside North, Central, and South

**3. Opticurrent does not accurately describe Judge Orrick's rulings.**

(a) Opticurrent asserts "Judge Orrick has already held that the QBar License is comparable." (Dkt. No. 217 at 8.) That is not true. The Court merely held that the testimony of Opticurrent's technical expert, Dr. Zane, would be *admissible* on the issue of *technical* comparability. (Dkt. 174 at 21-22.) On the issue of *economic* comparability, the Court held that Opticurrent's damages expert Mr. Evans "may not testify on this issue." (*Id.* at 22.)

(b) Opticurrent asserts the Court denied PI's motion *in limine* regarding total revenues. (Dkt. No. 217 at 11-12.) This is only partially true, and misleading. In fact, the Court denied PI's motion *in limine* #4 "without prejudice," and the Court withheld further judgment because at the time of the prior pretrial conference it was not clear what damages theory Opticurrent would pursue. (Dkt. No. 186 at 2 (the case cited by PI at the hearing, *VirnetX*, "related to apportionment, not a methodology as described by plaintiff at the hearing").) And the Order in question was dated January 7, 2019 – before Opticurrent disclosed its new theory.

(c) Opticurrent quotes the Court as saying the issues raised in the present briefs "will be taken up at the time of trial." (Dkt. No. 217 at 1.) This too is incomplete and misleading. In response to the quoted comment, PI's counsel requested permission to brief the issue before trial, and the Court agreed. (Dkt. No. 212 (1/22/2019 Hearing Tr.) at 8.) The Court subsequently issued an Order permitting this briefing. (Dkt. No. 208.)

**4. Opticurrent is not accurate about PI's positions.**

Opticurrent asserts that PI is seeking to challenge Opticurrent's royalty base "for the first time." (Dkt. No. 217 at 12.) What Opticurrent fails to acknowledge is that it disclosed a *new* royalty base after Mr. Evans was excluded. Never before had Opticurrent sought a percentage of PI's entire accused revenue, and it is this new base that is objectionable.

Opticurrent also misleadingly quotes PI as saying it agrees it "cannot introduce expert testimony challenging the royalty base." (*Id.*) Opticurrent is quoting a brief PI filed on December

---

America.").) As such, the agreements shed no light on the value of a single, uncommercialized patent in the U.S. *E.g.*, *Sentius Int'l, LLC v. Microsoft Corp.*, 2015 WL 451950, *8 (N.D. Cal. 2015) (excluding international portfolio license as not comparable to U.S. license for two patents).

31, 2108 (Dkt. No. 184), again before Opticurrent disclosed its new royalty base. PI very much objects to the new base (PI's entire accused revenue), and the fact that PI's expert's timely report only addressed the theories that Opticurrent had previously disclosed during discovery does not mean that PI cannot object to a newly-minted and improper theory like Opticurrent now proposes.

### 5. Opticurrent is wrong about the law.

Opticurrent labels PI's reading of *Commonwealth* "myopic," but in fact the holding of that case is narrow. *Commonwealth* does not purport to overrule *LaserDynamics*, *VirnetX*, or any of the other Federal Circuit cases finding use of a defendant's entire accused revenue reversible error. Instead, it makes the narrow and commonsense holding that the actual licensing history between the parties regarding the patent-in-suit is relevant and admissible. *Commonwealth Sci. & Indus. Research Organization v. Cisco Sys.*, 809 F.3d 1295, 1302-1303 (Fed. Cir. 2015).

In addition, Opticurrent's argument that it "is seeking a reasonable royalty on the smallest saleable unit" is no longer permitted. *VirnetX* abolished this exception. *VirnetX, Inc., et al. v Cisco Systems, Inc.*, et al., 767 F.3d 1308, 1327-28 (Fed. Cir. 2014).

Opticurrent's reliance on *Minks v. Polaris Industries*, 2009 U.S. Dist. LEXIS 92865 (M.D. Fla. Sep. 17, 2009) (Dkt. No. 218-1) is misplaced. This 2009 decision from the Middle District of Florida does not cite *VirnetX*, *LaserDynamics*, or any other recent Federal Circuit damages decision. And while it was affirmed without opinion, there is no record of what was argued on appeal, and the district court decision itself does not appear ever to have been cited by another court. Moreover, its holding is narrow and procedurally constrained. First, there is no indication that the defendant objected to the admission of its entire accused revenues. Second, the defendant failed to bring a motion for new trial. *Id.* at *14-15 n7. The only motion before the court was remittitur. Finally, the court left the jury verdict undisturbed because there was evidence (however shaky) that the defendant had previously sought an exclusive license from the plaintiff and paid the plaintiff a 20% royalty. *Id.* at *10-11, 14. That makes the case similar to *Commonwealth*, where agreements between the same parties were found relevant. By contrast, Opticurrent does not allege that PI ever sought a license from QBar or paid QBar any royalty.

The other district court cases cited by Opticurrent also do not support its position. *Sanofi-Aventis United States v. Genentech, Inc.*, 2016 U.S. Dist. LEXIS 191640, *3 (C.D. Cal. 2016) merely permits discovery regarding prior settlement agreements; it makes no ruling on admissibility, and does not discuss the admissibility of total revenue. *Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*, 2018 U.S. Dist. LEXIS 167104 (D. Del. 2018) acknowledges that comparable licenses can *sometimes* be used for apportionment, per *Commonwealth*, but it *excluded* the challenged expert testimony because his *application* of that principle to the facts of the case was cursory and unreliable. *Id.* at *23-24 ("The Federal Circuit has repeatedly emphasized the importance of apportionment as part of a district court's gatekeeping function. Allowing Mr. Malackowski's cursory analysis to circumvent the apportionment requirement would effectively gut the doctrine. Therefore, I find Mr. Malackowski's reasonable royalty opinion improper for failure to account for apportionment.") (internal citations omitted). What Opticurrent proposes to do in this case is exactly what the Court excluded in *Bio-Rad Labs*.

In short, Opticurrent has no case approving its new damages theory.

### 6. Opticurrent's principal Mr. Brunell should not be permitted to give undisclosed expert testimony.

Opticurrent proposes to fill the gap left by Mr. Evans' exclusion with its principal and corporate representative Mr. Brunell. However, Mr. Brunell was never disclosed as an expert, and his deposition testimony is not consistent with him being able to testify about how the Congdon/QBar license would compare to a hypothetical Congdon/PI license. At deposition, he testified as follows:

Q. When was the last time you looked at the '623 patent? [the patent-in-suit]

A. 2012 or '13.

Q. So you didn't look at the '623 patent to prepare for this deposition?

A. No. I did not.

* * *

Q. Did Mr. Congdon enter into an agreement with QBAR Tech?

A. I don't recall.

Q. Do you know whether Mr. Congdon ever licensed the '323 patent? [Mr. Congdon's older patent that he licensed to QBar]

A. I don't recall.

\* \* \*

Q. What is QBAR Tech?

A. I don't remember.  I think it -- they may have made switch products.

\* \* \*

Q. And you don't have any current knowledge of the technology behind the '623 patent.  Is that right?

A. No.  It's not necessary for my role.

(Ex. A hereto, Brunell 5/18/2017 Depo. at 198:14-19, 200:12-17, 202:6-8, 208:12-15.)  Even in the part of Mr. Brunell's deposition testimony that Opticurrent submits (Dkt. No. 206-4), after Mr. Brunell was reminded of the QBar agreement, he acknowledged that it would be very different from an agreement with PI. (*Id.* at 205:7-15 ("It's – it's one thing if it's a company like Power Integrations taking a license.  It's a different thing if they are two small companies working together….").)  Given this testimony, Opticurrent did not fairly disclose Mr. Brunell's proposed new trial testimony.  In addition, Mr. Brunell is not permitted to access PI's detailed financial records under the Protective Order, and PI has objected to any such disclosure.  It is not proper to share PI's sensitive financial data with a litigation investor like Mr. Brunell, whose companies exist solely to buy and assert patents in the Eastern District of Texas against companies like Power Integrations who actually make and sell products of value.

Therefore, Mr. Brunell should not be permitted to fill the gap left by Mr. Evans.

**7.   Opticurrent should not be permitted to try the damages case that it has proposed.**

Again, PI is not saying Opticurrent should not be permitted to try damages, but it should not be permitted to present the theory it is now advocating.

Dated: February 8, 2019

FISH & RICHARDSON P.C.

By: /s/ *Michael R. Headley*
    Michael R. Headley

Attorneys for Defendant
POWER INTEGRATIONS, INC.