Lewis E. Hudnell, III (CASBN 218736)
Hudnell Law Group P.C.
800 W. El Camino Real Suite 180
Mountain View, California 94040
T: 650.564.7720
F: 347.772.3034
lewis@hudnelllaw.com

Jonathan T. Suder (admitted pro hac vice)
Corby R. Vowell
Dave R. Gunter
FRIEDMAN, SUDER & COOKE
604 East 4th Street, Suite 200
Fort Worth, TX  76102
T: 817-334-0400
F:  817-334-0401
vowell@fsclaw.com
jts@fsclaw.com
gunter@fsclaw.com

ATTORNEYS FOR PLAINTIFF
OPTICURRENT, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA,**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| OPTICURRENT, LLC<br><br>Plaintiff,<br><br>vs.<br><br>POWER INTEGRATIONS, INC.,<br><br>Defendant. | CASE NO. 3:17-cv-03597-EMC<br><br>**PLAINTIFF'S MOTION FOR ATTORNEY FEES UNDER 35 U.S.C. § 285**<br><br>DATE:   April 18, 2019<br>TIME:    2:30 p.m.<br>JUDGE:  Hon. Edward M. Chen |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

I.  JUDGMENT AWARDING ATTORNEYS' FEES ........................................................1
    A.  Entitlement Under Section 285 ............................................................................1
    B.  Unreasonable Litigation Conduct Warrants an Exceptional Case Finding .............2
1.  Defendant's Sham Investigation into the Substantive Merits of the Suit ...........................2
2.  Hiding Key Documents......................................................................................................3
3.  Opposition to Amended Infringement Contentions............................................................5
4.  Misrepresentations to the Court Regarding Accused Product Families at Trial.................6
5.  Expert's Introduction of Impermissible Theories ..............................................................6
6.  Wholesale Abandonment of Invalidity Positions at Last Possible Moment.......................7
7.  Refusal to Produce Updated Sales Figures ........................................................................8
8.  "Hide the Ball" Pretrial Strategy and Blanket Overinclusion of Exhibits ..........................9
9.  Constant Ad Hominem Attacks and Unnecessarily Heated Rhetoric.................................9
II. PLAINTIFF'S FEES ARE REASONABLE ..................................................................10
III. CONCLUSION................................................................................................................11
CERTIFICATE OF CONFERENCE........................................................................................12
CERTIFICATE OF SERVICE .................................................................................................12

# TABLE OF AUTHORITIES

*Beckman Instr. Inc. v. LKB Produkter AB*,
    892 F.2d 1547 (Fed. Cir. 1989) ............................................................................................. 2

*Bywaters v. United States*,
    670 F.3d 1221 (Fed. Cir. 2012) ........................................................................................... 10

*Epcon Gas Sys. Inc. v. Bauer Compressors, Inc.*,
    279 F.3d 1022 (Fed. Cir. 2002) ............................................................................................. 2

*Hoffmann-La Roche Inc. v. Invamed Inc.*,
    213 F.3d 1359 (Fed. Cir. 2000) ............................................................................................. 2

*Hynix Semiconductor Inc. v. Rambus Inc.*,
    609 F. Supp. 2d 951 (N.D. Cal. 2009) .................................................................................. 8

*Mathis v. Spears*,
    857 F.2d 749 (Fed. Cir. 1988) ............................................................................................. 10

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.*,
    134 S. Ct. 1749 (2014) .................................................................................................... 1, 7

*Q-Pharma, Inc. v. Andrew Jergens Co.*,
    360 F.3d 1295 (Fed. Cir. 2004) ........................................................................................... 10

*Sensonics, Inc. v. Aerosonic Corp.*,
    81 F.3d 1566 (Fed. Cir. 1996) ............................................................................................... 2

*Server Tech., Inc. v. Am. Power Conversion Corp.*,
    2017 U.S. Dist. LEXIS 74485 (D. Nev. 2017) ..................................................................... 8

1   Defendant's conduct, from the very beginning of this suit and continuing up to and through trial, deem this case exceptional under 35 U.S.C. § 285.  At every turn, Defendant has engaged in vexatious strategies for the sole purpose of making this lawsuit as time-consuming and expensive as possible.  Defendant employed numerous deceptive litigation approaches, including by way of example its repeated attempts to challenge validity that were ultimately abandoned days before trial, that served no purpose other than taxing Plaintiff's resources.  As shown at trial, no one at Power Integrations performed more than a cursory "glancing" at the '623 Patent, nor did they ever make a good-faith undertaking to understand how the accused products infringe claim 1.  To the contrary, Defendant made the conscious decision that it would never license another's intellectual property, no matter how blatant their infringement.  Other tactics, such as hiding and failing to produce relevant documents until forced with no other option, created a situation in which Plaintiff will not be sufficiently compensated by the jury's award alone.  Simply put, this case is exceptional because of the unreasonable manner in which Defendant litigated, and Defendant's conduct warrants a finding of fees.  See *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014).

## I.   JUDGMENT AWARDING ATTORNEYS' FEES

### A.  Entitlement Under Section 285

The fee-shifting provision for patent cases, 35 U.S.C. § 285, states "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  Under the Supreme Court's decision in *Octane Fitness*, an exceptional case is one that, considering the totality of the circumstances, "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness*, 134 S. Ct. at 1756.  A litigant may show that it is entitled to fees under Section 285 by a preponderance of the evidence.  *Id*. at 1758.

The evidence upon which an "exceptional case" finding may be based includes, but is not limited to, litigation misconduct, vexatious, unjustified, and otherwise bad faith litigation.  See

1

1  *Hoffmann-La Roche Inc. v. Invamed Inc.*, 213 F.3d 1359, 1365 (Fed. Cir. 2000). As the Federal Circuit has duly noted, "misconduct during litigation" alone can make a case exceptional. *Beckman Instr. Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989); see also *Epcon Gas Sys. Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1034 (Fed. Cir. 2002) ("Litigation misconduct and unprofessional behavior are relevant to the award of attorney fees, and may suffice, by themselves, to make a case exceptional."). An award of attorneys' fees can be granted without a finding of willful infringement. *Beckman*, 892 F.2d at 1552. "Bad faith and willful infringement are not the only criteria whereby a case may be deemed 'exceptional,' although when either is present the requirement is more readily met. Litigation misconduct and unprofessional behavior are relevant to the award of attorney fees and may suffice to make a case exceptional under § 285." *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1574 (Fed. Cir. 1996). "It is the judicial duty to refuse to condone behavior that exceeds reasonable litigation tactics." *Id.* at 1575.

### B.  Unreasonable Litigation Conduct Warrants an Exceptional Case Finding

The following are just a few examples that are indicative of a larger problem whereby Defendant regularly devised ways to tax Plaintiff's time and resources on issues and evidence it knew carried no genuine weight and it would not be presenting at trial. After viewing Defendant's litigation behavior as a whole, including the specific instances below highlighting the more grievous examples, the Court should find that Defendant's tactics justify an exceptional case finding.

#### 1.  Defendant's Sham Investigation into the Substantive Merits of the Suit

Power Integrations' behavior at the outset of the litigation, and the weight it gave Plaintiff's infringement allegations following the filing of this suit all the way through the completion of trial before a jury, explain a great deal about the persistent vexatious litigation strategies employed by its counsel. At trial, multiple corporate representatives for Defendant testified that no one at the company gave a legitimate investigation into the '623 Patent, its claims, or Plaintiff's infringement allegations. Cliff Walker, Vice President of Corporate

2

1  Development, confirmed that he was not an engineer or a lawyer, did not request an engineer to
2  review the asserted claim and its relationship with the accused products, and instead stated there
3  was no employee at the company to even undertake an analysis of the infringement matters at
4  issue in the suit.[1]  In fact, Mr. Walker stated repeatedly that it was Power Integrations' corporate
5  policy to never license another party's intellectual property, no matter how strong the
6  infringement read may be against the company.[2]

7  Continuing along an identical theme, David Kung, corporate representative for issues
8  concerning the technology at issue and so-called father of the accused products, stated that he
9  only "glanced" at the patent – and did so only one year after being sued and a couple weeks
10  before he was to be deposed.[3]  He stated that no one at Power Integrations had performed even
11  the bare minimum to actually studying and understanding the substantive merits of the litigation.
12  In fact, it is apparently corporate policy to engage in what can only be explained as willful
13  blindness as it relates to Power Integrations response to patent infringement suits.  Understanding
14  Power Integrations' corporate policy, whereby it refuses to even undertake an analysis of
15  infringement because no matter the result it would never consider licensing a third party's
16  intellectual property, speaks directly to the motive behind the actions it has taken throughout the
17  litigation.

### 2. Hiding Key Documents

19  A prime example of Defendant's bad faith litigation tactics is evidenced through the fact
20  that critical documents, including a patent license ("License") to which Power Integrations was a
21  party, were not produced in this litigation during the discovery period.  These documents were
22  highly relevant to the issue of damages.  Defendant was under an obligation, according to the
23  local rules for the District Court for the Eastern District of Texas where this case was pending
24  during the entirety of fact discovery, to produce all relevant documents, including those relating

---

[1] *See* Trial Transcript, Volume 3 at 518:3-24 (no legal or engineering education); 522:20-523:8 (no employee whose job it is to investigate potential infringement); 535:2-12 (nothing to support Mr. Walker's contention that accused products do not infringe the '623 patent).
[2] Trial Transcript, Volume 3 at 522:4-7 (confirming corporate policy to never take a license from anyone else).
[3] Trial Transcript, Volume 3 at 602:19-22.

3

1  to Opticurrent's pleaded claims and including those relevant to computation of damages "without
2  awaiting a discovery request[.]" Dkt. No. 27. As stated in the Discovery Order, "The Court
3  anticipates that this disclosure requirement will obviate the need for requests for production."
4  Dkt. No. 27 at FN1. Defendant's failure to comply with its discovery obligations is even more
5  vexatious considering the fact that counsel for Opticurrent wrote to Power Integrations on
6  August 12, 2016 specifically requesting documents that were responsive to this litigation and to
7  which the License would be responsive.[4] Nearly a year later, in April 2017, 30(b)(6) topics[5]
8  relating to licenses were served on Power Integrations and its corporate representative, Cliff
9  Walker, was deposed on that very issue. During his deposition, Mr. Walker was questioned
10 directly about existing licenses to which Power Integrations was a party (including licenses that
11 Power Integrations believed were relevant and those it contends were not relevant), and he did
12 not disclose the existence of this License.

13     While attending Power Integrations' trial against Fairchild in November 2018, counsel
14 for Opticurrent was first made aware of the License agreement between Power Integrations, Inc.
15 and its Cayman Island subsidiary Power Integrations International Ltd. Because this License
16 pertains to similar technology and relates to some of the same products at issue in this litigation,
17 it qualifies as a comparable license that may be considered when analyzing the hypothetical
18 negotiation. Mr. Walker, who was present at the Fairchild trial, did not identify the License
19 presumably because Power Integrations did not want to disclose documents that would support a
20 higher royalty than Opticurrent sought at trial. In other words, it was not simply an oversight to
21 omit the disclosure of these documents, but instead a conscious decision to engage in bad faith
22 litigation. Defendant did not produce the license until Plaintiff brought the issue before Judge
23 Orrick.

24     Defendant has never provided a credible explanation for its blatant and egregious
25 behavior. In response to Dkt. Nos. 151 and 159-1, where Plaintiff notified the Court of this

---

[4] Attached as Exhibit 2 to the Declaration of Jonathan T. Suder is a copy of Plaintiff's letter dated August 12, 2016. Requests Nos. 14 and 15 both implicate disclosure of the license.
[5] Attached as Exhibit 3 to the Declaration of Jonathan T. Suder is a copy of Plaintiff's amended 30(b)(6) request.

4

issue, Defendant's only response was to object to the wording of Plaintiff's discovery requests. This argument carries no weight when considering Defendant's discovery obligations under the Discovery Order and does not justify its blanket omissions when its corporate representative was directly asked about the license during his deposition. This is but one example of Defendant's misconduct that was pervasive throughout the litigation.

### 3. Opposition to Amended Infringement Contentions

Despite having no legitimate basis for doing so, Defendant vigorously opposed Plaintiff's efforts to amend its Infringement Contentions to conform with the evidence produced in the litigation. Following the disclosure of initial Infringement Contentions, certain documents relating to conception and reduction to practice were located during the course of discovery and were promptly produced. Subsequently, Defendant served its one and only written discovery request. Plaintiff served its timely response, identifying by Bates number the specific documents that had been produced and that related to conception and reduction to practice.[6] Thereafter the Court issued its Order on Claim Construction. *See* Dkt. No. 58. Based on the Court's constructions, and pursuant to Eastern District of Texas Patent Local Rule 3-6(a), Plaintiff timely served Amended Infringement Contentions.

In the course of providing its Amended Infringement Contentions, Plaintiff updated the information relating to conception and reduction to practice that had already been produced and identified during discovery. To be clear, Plaintiff was not seeking to provide a new conception date, or to provide additional documents that were being produced for the first time. Instead, Plaintiff was simply conforming the statements in the Amended Infringement Contentions to accurately reflect its cited document production as previously produced and as stated in its Response to Interrogatory No. 6.

Nevertheless, Defendant opposed Plaintiff's efforts to amend because:

> Power Integrations would need to re-do fact discovery and its prior art search, in addition to revisiting claim construction to address Opticurrent's complete

---

[6] *See* Response to Defendant's Interrogatory No. 6, Dkt. No. 64-7.

overhaul of its infringement contentions and conception story. Thus, if the Court is at all inclined to allow Opticurrent to re-do its affirmative case at this state, a continuance would be required to relieve the prejudice, including a new schedule to address contentions, fact discovery, claim construction, and a trial at some point in the future.

Dkt. No. 69. After the transfer of this case to the Northern District, the Court granted Plaintiff's request to amend. Defendant never followed through with its threats and did not seek to re-do claim construction or its invalidity contentions and clearly never intended to actually do so.

### 4. Misrepresentations to the Court Regarding Accused Product Families at Trial

From the very outset of litigation, Defendant was on notice that the accused products included the product families themselves, as opposed to individual product numbers within the families. Defendant nevertheless sought to exclude accused products the week trial was set to begin. As discussed in further detail in Plaintiff's Motion for Supplemental Judgment on Excluded Products (being filed concurrently herewith), Defendant's mischaracterizations about the accused product families resulted in the exclusion of certain products. These excluded products were identified in Defendant's own documentation as falling within the accused product families, and as shown by their datasheets, have the same components and functionality of the other chips in the accused families. Defendant's objection, on the eve of trial and with no prior notice, is further evidence of its bad faith litigation tactics.

### 5. Expert's Introduction of Impermissible Theories

Defendant's technical expert, William Bohannon, violated well-established case law that prevents the inclusion of invalidity arguments made under the guise of noninfringement opinions. This is because issues of infringement and invalidity are separate, each with its own burden of proof. Despite the clear pronouncement by the Federal Circuit on the law against "practicing the prior art" noninfringement defenses, Defendant submitted a Rebuttal Report that for the first time alleged the following products to be prior art: the TOPSwitch-GX, the TOPSwitch-II and the TinySwitch Plus. None of these were in his opening report on invalidity. In fact, Defendant's Invalidity Contentions included only two of those products: the TOPSwitch-

1    II and TinySwitch Plus.  There was no reference to the TOPSwitch-GX product, and Defendant
2    never moved to amend its Invalidity Contentions.
3         In response, Plaintiff was required to file a *Daubert* motion to strike the impermissible
4    portions of Mr. Bohannon's Rebuttal Report.  *See* Dkt. Nos. 145, 156.  In its opposition,
5    Defendant relied on a series of arguments that have been rejected by courts within this District.
6    Agreeing with Plaintiff, and explicitly recognizing the cited decisions from other Northern
7    District courts on this issue, the Court granted Plaintiff's *Daubert* motion.  Defendant knew full
8    well that its attempted end-around through Mr. Bohannon would not work, but nevertheless
9    made Plaintiff go through the time and expense to have those opinions excluded.  Defendant's
10   sole remaining non-infringement position at trial, that the capacitor connected to the bypass
11   terminal qualifies as a power supply, had no "substantive strength" per the standards set forth
12   under *Octane*.  Again, this is indicative of a pattern of litigation misconduct.

### 6. Wholesale Abandonment of Invalidity Positions at Last Possible Moment

14        During the entire litigation, and indeed up until days before trial was set to begin,
15   Defendant persisted in contesting the validity of the '623 Patent.  These arguments, including 35
16   U.S.C. §§ 102, 103 and 112 challenges, were actually "challenges" in name only.  The best
17   evidence for this, and one of the more egregious examples of its litigation misconduct, is the fact
18   that Defendant ***abandoned its invalidity case in its entirety*** shortly before trial was to begin.
19        Setting aside the impermissible opinions of Mr. Bohannon that were struck by the Court's
20   *Daubert* ruling, Defendant's remaining invalidity arguments rested on a half-dozen prior art
21   references – none of which were presented at trial.  In response to Defendant's opening expert
22   report, Plaintiff's expert was forced to spend extra hours attempting to reconcile and refute the
23   inexplicable validity challenges set forth by Mr. Bohannon.  Defendant also filed a motion for
24   summary judgment seeking a finding of invalidity, which was ultimately denied.  Plaintiff, its
25   counsel, and its expert had to devote substantial resources to exposing the shortcomings of all of
26   Defendant's cited references.  Even now, post verdict, Defendant has opposed Plaintiff's request
27   for a judgment as a matter of law on the counterclaim of invalidity.  To persist in keeping these

allegations in the case, until the last possible moment only to be dropped in their entirety, evidences the clearly meritless substance of its position.

### 7. Refusal to Produce Updated Sales Figures

In the weeks leading up to trial, Defendant refused to supplement its damages related documentation. This, despite an ongoing obligation to supplement and Plaintiff's express request for such information before trial, is yet another example of Defendant's bad faith litigation conduct. This should be a routine request, yet Defendant previously opposed Plaintiff's efforts under the guise that Power Integrations has not yet "closed its books." That is directly contrary to the testimony of Power Integrations 30(b)(6) witness, who confirmed at trial that Defendant keeps this information on a monthly basis and had within its possession the figures requested by Plaintiff. Defendant had no legitimate basis to oppose supplementation. See, e.g., *Server Tech., Inc. v. Am. Power Conversion Corp.*, 2017 U.S. Dist. LEXIS 74485 (D. Nev. 2017) (jury verdict established 5% royalty rate through 2013, but Defendant had not yet produced sales records through date of judgment; court required supplementation of damages through date of judgment to "compensate [plaintiff] fully for [defendant's] infringement[.]"), citing *Hynix Semiconductor Inc. v. Rambus Inc.*, 609 F. Supp. 2d 951, 964 (N.D. Cal. 2009).

While inconsistent with the testimony of its own corporate representative, it is in keeping with Power Integrations' repeated attempts to limit the damages that would be presented to the jury. For example, Defendant's Motion in Limine No. 4 sought to keep the full amounts of the accused products revenues from the view of the jury. Judge Orrick denied this request. Then, upon transfer of the case to Judge Chen, Defendant once again renewed its request to limit the damages shown to the jury but request was once again denied. Other than its transparent attempts to keep the proper amount of damages away from the finder of fact at every turn, Defendant had no legitimate basis to refuse supplementation of its sales figures. It was not until the meet and confer in advance of filing of this Motion, on March 14, 2019, that Defendant finally acquiesced to produce this information.

### 8. "Hide the Ball" Pretrial Strategy and Blanket Overinclusion of Exhibits

Despite being ordered to exchange pretrial materials on December 10, 2018, Defendant provided little more than a shell of information at that time. Notably absent were any draft jury instructions, verdict form, and most importantly an exhibit list. Then, in the weeks leading up to trial, Defendant insisted on the inclusion of hundreds of trial exhibits and documents that had no chance of being relevant at trial. Among these were documents cited in Defendant's expert report on invalidity, an issue that it never intended to use at trial. And contrary to the guidance provided by the Court, Defendant's proposed exhibit list included duplicate documents and versions of documents. This forced Plaintiff to divert valuable resources and personnel for the purpose of reviewing each of those exhibits to determine whether an objection should be raised. By the end of trial, Defendant had offered only a handful of exhibits into evidence. This is yet another example of Defendant's blatant disregard to the merits of the litigation and continued efforts to make the process be as timely and expensive as possible.

### 9. Constant Ad Hominem Attacks and Unnecessarily Heated Rhetoric

At every opportunity, whether in the form of a pleading filed with the Court or when meeting face to face, Defendant would accuse Plaintiff of bringing a meritless lawsuit, and threaten to seek fees under an exceptional case finding. This unnecessary and frankly unproductive rhetoric continued even after Plaintiff's disclosure of its legitimate infringement theories and rebuttal positions raised through discovery and beyond. The following examples stand out.

- Dkt. No. 48: "As explained in detail below, Plaintiff's litigation-driven proposed constructions and proposed interpretations of the claims, almost universally, directly contradict the intrinsic record and should be rejected." Shortly thereafter, the Court ruled against Power Integrations and in favor of Plaintiff's proposed constructions.
- Dkt. No. 69: "Opticurrent's attempt to introduce a doctrine of equivalents theory at this late stage – in a transparent effort to salvage a failed infringement case – are unacceptable and should be rejected." After briefing on the issue, Court grants Plaintiff's request for leave to amend; jury verdict unanimously finds infringement literally and under the doctrine of equivalents.
- Dkt. No. 92: Requesting Court to enter judgment in its favor and find this "an exceptional case under 35 U.S.C. 285 and award Power Integrations its costs and reasonable

attorneys' fees[.]"  In addition, "given the glaring deficiencies in Plaintiff's claims, Power Integrations does not believe that Plaintiff's infringement claim can ultimately survive summary judgment, and Power Integrations proposes that the Court stage the proceedings going forward so as not to waste the parties' or the Court's time with unnecessary and burdensome trial preparations at this time."  Plaintiff's case survived not only one, but two motions for summary judgment motions filed by Defendant.

- Dkt. No. 98: "Now that Power Integrations has had time to investigate Opticurrent's amended contentions, it is clear that this case can be resolved on summary judgment, and the parties and the Court should be spared the time and expense associated with expert discovery and trial preparations."  Again, Plaintiff emerges victorious in spite of multiple summary judgment motions.

Over the course of the litigation, Defendant took every opportunity to claim the patent was invalid, they did not infringe and that they would be seeking fees following a finding in their favor.[7]  In the face of Plaintiff's overwhelming evidence of infringement and validity, Defendant never deviated from its bad faith litigation script.

## II. PLAINTIFF'S FEES ARE REASONABLE

Section 285 permits the award of "reasonable" attorneys' fees in an exceptional case. Federal Circuit law controls the calculation of reasonable attorney fees in a patent infringement case.  *Bywaters v. United States*, 670 F.3d 1221, 1227-28 (Fed. Cir. 2012); see also *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1299 (Fed. Cir. 2004).  "Normally this will encompass all hours reasonably expended on the litigation."  *Mathis v. Spears*, 857 F.2d 749, 755-56 (Fed. Cir. 1988).  The Federal Circuit has endorsed the "lodestar" approach to calculating reasonable attorneys' fees, which requires multiplying the number of hours reasonably expended by a reasonable hourly rate.  *Bywaters v. United States*, 670 F.3d 1221, 1225-26 (Fed. Cir. 2012). It has also held that courts may consider factors such as the "amount involved and results obtained," the sophistication of the work, and the client's fee agreement.  *Id*. at 1231-32.

Submitted concurrently herewith is the Declaration of Jonathan T. Suder, lead counsel for Plaintiff.  Exhibit 1 to the Suder Declaration is a summary chart of expenses incurred by Friedman, Suder & Cooke in connection with this matter.  The Suder Declaration also includes a summary list of fees representing the work performed by Friedman, Suder & Cooke and Hudnell

---

[7] Declaration of Jonathan T. Suder at ¶ 20.

10

1  Law Group. Suder Decl. at ¶ 8. As supported by Mr. Suder's Declaration, the fees and expenses
2  incurred in this case are more than reasonable for the amount of work involved, the complexity
3  of the case, and the result obtained. Suder Decl. at ¶ 19. The fees and expenses are also
4  consistent with the average cost for a patent litigation matter of this nature to go to trial,
5  according to publicly available studies showing total average cost to be between $1 and $5
6  million dollars. *Id.* Lastly, Plaintiff's fees and expenses are also reasonable when considering
7  the bills submitted by counsel for Defendant during the course of this litigation. *Id.*

### III. CONCLUSION

Plaintiff respectfully requests that the Court find this case exceptional pursuant to Section 285 and award Plaintiff its attorneys' fees.

Date:   March 18, 2019.

Respectfully submitted,

/s/ Jonathan T. Suder
Corby R. Vowell
Dave R. Gunter
FRIEDMAN, SUDER & COOKE

Lewis Hudnell, III
Hudnell Law Group, P.C.

ATTORNEYS FOR PLAINTIFF
OPTICURRENT, LLC

**CERTIFICATE OF CONFERENCE**

I hereby certify that on March 14, 2019, counsel for Plaintiff conferred with counsel for Defendant, and counsel for Defendant indicated it was opposed to the relief sought in this Motion.

/s/ Jonathan T. Suder

**CERTIFICATE OF SERVICE**

I hereby certify that on the 18th day of March, 2019, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of California, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ Jonathan T. Suder