Frank E. Scherkenbach (CA SBN 142549)
scherkenbach@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA  02210-1878
Tel: (617) 542-5070 ** Fax:  (617) 542-8906

Michael R. Headley (CA SBN 220834)
headley@fr.com
Neil A. Warren (CA SBN 272770)
warren@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA  94063
Tel: (650) 839-5070 ** Fax:  (650) 839-5071

John W. Thornburgh (CA SBN 154627)
thornburgh@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA  92130
Tel: (858) 678-5070 ** Fax:  (858) 678-5099

Joseph Warden (Admitted *pro hac vice*)
warden@fr.com
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19899-1114
Tel: (302) 652-5070 ** Fax: (302) 652-0607

Attorneys for Defendant
POWER INTEGRATIONS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| OPTICURRENT, LLC,<br><br>   Plaintiff,<br><br> v.<br><br>POWER INTEGRATIONS, INC.,<br><br>   Defendant. | Case No. 3:17-cv-03597-EMC<br><br>**POWER INTEGRATIONS' OPPOSITION TO PLAINTIFF'S MOTION FOR ONGOING ROYALTY** |

**TABLE OF CONTENTS**

I.  INTRODUCTION ............................................................................................................. 1

II. ARGUMENT ................................................................................................................... 1

    A.    There is No Post-Verdict Increased Bargaining Power That Would Justify an Increased Royalty Rate ................................................................. 1

    B.    The QBAR License Does Not Support an Increased Royalty Rate ...................... 4

III. CONCLUSION ................................................................................................................ 5

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
   694 F.3d 1312 (Fed. Cir. 2012) ................................................................................................3

*Affinity Labs of Texas, LLC v. BWM North America, LLC*,
   783 F. Supp. 2d 891 (E.D. Tex. 2011) ......................................................................................3

*Amado v. Microsoft Corp.*,
   517 F.3d 1353 (Fed. Cir. 2008) .............................................................................................1, 2

*Ariba, Inc. v. Emptoris, Inc.*,
   567 F. Supp. 2d 914 (E.D. Tex. 2008) ......................................................................................2

*Boston Scientific Corp. v. Johnson & Johnson*,
   2008 WL 5054955 (N.D. Cal. Nov. 25, 2008) .........................................................................3

*Creative Internet Adver. Corp. v. Yahoo! Inc.*,
   674 F. Supp. 2d 847 (E.D. Tex. 2009) ......................................................................................3

*Cummins–Allison Corp. v. SBM Co.*,
   584 F. Supp. 2d 916 (E.D. Tex. 2008) ......................................................................................2

*Garretson v. Clark*,
   111 U.S. 120 (1884) ..................................................................................................................4

*Hynix Semiconductor Inc. v. Rambus Inc.*,
   609 F. Supp. 2d 951 (N.D. Cal. 2009) ......................................................................................3

*Presidio Components Inc. v. American Technical Ceramics Corp.*,
   2010 WL 3070370 (S.D. Cal. 2010) .........................................................................................2

*Syntrix Biosystems, Inc. v. Illumina, Inc.*,
   2013 WL 3089448 (W.D. Wash. June 18, 2013) ..................................................................3, 4

*Telcordia Techs., Inc. v. Cisco Sys., Inc.*,
   2014 WL 1457797 (D. Del. 2014) ............................................................................................3

*University of Pittsburgh v. Varian Medical Systems*,
   2012 WL 1436569 (W.D. Pa. Apr. 25, 2012) ...........................................................................2

## I. INTRODUCTION

For the reasons articulated in Power Integrations Post-Trial Motions ("PI's Post-Trial Motions, filed concurrently herewith), this Court should enter judgment as a matter of law of non-infringement in Power Integrations' favor, and there should be no ongoing royalty. (*See* PI's Post-Trial Motions at 5-8.) Separately, as also set forth in PI's Post-Trial Motions, Opticurrent has proven no more than nominal damages, which is an independent basis to set no ongoing royalty. (*See id.* at 3-5.)

To the extent this Court elects to set an ongoing royalty, the ongoing royalty rate should be no higher than the royalty rate used for past damages. Opticurrent's argument that the rate should be higher due to "better bargaining power" has been rejected where, as here, there is no possibility of injunctive relief. Opticurrent's separate argument that the factual record regarding the QBar license supports a higher royalty was rejected by the Jury and is contrary to law. Accordingly, Opticurrent has provided no basis for setting an ongoing royalty rate higher than the rate for past damages.

## II. ARGUMENT

For the reasons articulated below, if this Court elects to set an ongoing royalty rate, that rate should be no higher than the rate used for past damages—whether that is 3 percent (pursuant to the verdict) or something less (pursuant to PI's Post-Trial Motions).

### A. There is No Post-Verdict Increased Bargaining Power That Would Justify an Increased Royalty Rate

Opticurrent's assertion that it now has "better bargaining power" justifying an increased royalty rate is unsupported where, as here, Opticurrent has not sought a permanent injunction. In *Amado v. Microsoft Corp.*, 517 F.3d 1353 (Fed. Cir. 2008)—the primary case relied on by Opticurrent—the plaintiff had sought a permanent injunction, which the district court granted and then stayed. The Federal Circuit explained that when "a district court ***concludes that an injunction is warranted***, but is persuaded to stay the injunction pending an appeal, the assessment of damages for infringement ***taking place after the injunction*** should take into account the change in the parties' bargaining positions . . . ." *Id.* at 1362 (emphasis added). By contrast, decisions

subsequent to *Amado* have recognized that, where there is no threat of an injunction, the reasoning of *Amado* does not apply.  As explained in those cases, absent the threat of an injunction, there is no change in bargaining power between the hypothetical negotiation and any post-judgment negotiation because the hypothetical negotiation already required the assumption that the patents are valid and infringed.  For example, in *University of Pittsburgh v. Varian Medical Systems*, 2012 WL 1436569, at *11-12 (W.D. Pa. Apr. 25, 2012), the court rejected the argument made by Opticurrent that there was increased bargaining power due to the jury's verdict.  The court explained that, for purposes of the hypothetical negotiation, "the jury was instructed to assume . . . that the '554 patent was valid and was being infringed" and therefore the jury's subsequent verdict did not create any "change in circumstances from the jury's award of a reasonable royalty."  *Id.* at *11.  In reaching that holding, the court expressly considered the cases relied on by Opticurrent, such as *Amado*, and held that they were inapplicable where the plaintiff had not sought an injunction: "The change in the bargaining position found in *Amado* was that the patentee was seeking a permanent injunction when such a remedy did not exist for sales that occurred prior to entry of final judgment.  Here, there are no such changed circumstances because Pitt has never sought a permanent injunction."  *Id.* at *12.  *See also Presidio Components Inc. v. American Technical Ceramics Corp.*, 2010 WL 3070370, at *4 (S.D. Cal. 2010) ("Accordingly, with permanent injunction off the table, the bargaining positions of a willing patentee and infringer are substantially the same as they would have been at the time the infringement began."); *cf. Cummins–Allison Corp. v. SBM Co.*, 584 F. Supp. 2d 916, 918 (E.D. Tex. 2008) ("[A] jury finding of infringement and no invalidity does not change any logically consistent analysis; rather, it merely confirms the original assumption of those facts.  It is inconsistent and unnecessarily confusing to adopt the position that once the assumed facts upon which the expert's analysis of the hypothetical negotiation are confirmed by a verdict, the expert can change his opinion of a reasonable royalty rate."); *Ariba, Inc. v. Emptoris, Inc.*, 567 F. Supp. 2d 914, 918 (E.D. Tex. 2008) ("[I]t is logically inconsistent to argue that a calculation based upon assumptions of infringement and validity would change when those assumptions are replaced by jury findings of the same facts.").

1      Notably, in nearly all of the cases relied on by Opticurrent in which the Court held there
2 was increased bargaining power, the plaintiff was seeking a permanent injunction.  *See*
3 *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1317, 1342 (Fed. Cir.
4 2012) ("Following trial, the district court entered a permanent injunction."); *Hynix Semiconductor*
5 *Inc. v. Rambus Inc.*, 609 F. Supp. 2d 951, 965 (N.D. Cal. 2009) (discussing plaintiff's request for a
6 permanent injunction); *Creative Internet Adver. Corp. v. Yahoo! Inc.*, 674 F. Supp. 2d 847, 852
7 (E.D. Tex. 2009) (same); *Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 2014 WL 1457797, at *1 (D.
8 Del. 2014) (same); *Affinity Labs of Texas, LLC v. BWM North America, LLC*, 783 F. Supp. 2d
9 891, 896 (E.D. Tex. 2011) (same); *Boston Scientific Corp. v. Johnson & Johnson*, 2008 WL
10 5054955, at *3 (N.D. Cal. Nov. 25, 2008) (seeking an injunction as an alternative to an ongoing
11 royalty).
12      Although Opticurrent discusses one case—*Syntrix Biosystems, Inc. v. Illumina, Inc.*, 2013
13 WL 3089448 (W.D. Wash. June 18, 2013)—in which the court found increased bargaining power
14 without a request for a permanent injunction, that case does not support the same conclusion here.
15 First, in *Syntrix*, the court was not presented with, and did not consider, the argument that there is
16 no change in bargaining position when there is no threat of an injunction.  As the above-cited
17 cases show, however, the courts that have considered that question have found that there is no
18 change in bargaining position under those circumstances, and this Court should do likewise.
19 Second, the reason the *Syntrix* court found there to be a change in bargaining position was not
20 merely because *Syntrix* had prevailed, but because of "the decisiveness" of the jury's verdict,
21 which "after an eleven-day trial . . . returned a complete verdict for *Syntrix* in two and a half
22 hours."  *Id.* at *2.  Here, there was no such decisiveness.  Rather, the Jury *rejected* Opticurrent's
23 position on two of the key issues: The Jury found that PI does *not* induce infringement, which (as
24 discussed at length in the PI's Post-Trial Motions) means that no more than 6% of PI's accused
25 products are subject to the infringement verdict.  And, despite Opticurrent's assertion that the Jury
26 "awarded the upper-end 3% royalty rate," the Jury actually *rejected* Opticurrent's arguments that
27 "3 percent is too low" (Trial Tr. at 895:24) and that the Jury should award up to "a little bit more
28 than about 5 percent." (*Id.* at 897:12-15.)  Additionally, in contrast to the rapid deliberation

1  following an 11-day trial in *Syntrix*, here, after a 3-day trial, the Jury elected to come back after
2  the weekend for further deliberations. Thus, the facts of *Syntrix* do not support an increased
3  royalty rate here.

####    B.   The QBAR License Does Not Support an Increased Royalty Rate

Opticurrent's other argument for an increased royalty rate—that the 3% rate in the QBar license supports a 5% royalty here—suffers from numerous flaws, and should be rejected. First, Opticurrent's assertion that a license to the '623 patent is worth more than a license to the '323 patent (which the QBar license covered) was considered and rejected by the Jury. (*See, e.g.*, Trial Tr. (Opticurrent Closing) at 853:18-20, 857:16-19 ("[QBAR] was the earlier patent, and this is an improvement. And the improvement, it's up to you what the value of that improvement is. . . . you get to decide the rate. If you use just a slight improvement on the 3 percent, if you did 3 and-a-half percent, that's about a penny per unit. 5 percent is about a penny-and-a-half.") Yet, despite Opticurrent's argument that the "improvement" of the '623 patent was worth 3.5 to 5 percent, the Jury rejected that position and awarded only the 3 percent from the QBar license. Opticurrent has provided no basis for this Court to reject the Jury's finding in that regard.

Second, even if the Jury had not rejected Opticurrent's argument, Opticurrent's argument that, as an "improvement," a license to the '623 patent is worth more than a license to the '323 patent gets the law backwards. As described in the Supreme Court's seminal case on "improvements," when seeking damages for an "improvement" patent, the patentee can claim only the value of the new improvement—the patentee does not get the value of the foundational patent *plus* the value of the improvement, as Opticurrent suggests. *See Garretson v. Clark*, 111 U.S. 120, 121 (1884) ("When a patent is for an improvement, and not for an entirely new machine or contrivance, the patentee must show in what particulars his improvement has added to the usefulness of the machine or contrivance. He must separate its results distinctly from those of the other parts, so that the benefits derived from it may be distinctly seen and appreciated."). Thus, Opticurrent's suggestion that PI should pay it the 3% value of the '323 patent plus something extra for the value of the '623 improvement is wrong. Rather, PI should pay Opticurrent **_0%_** for the '323 patent (both because PI was never accused of infringing the '323 patent and because it is in

the public domain), and should only be paying for the incremental value of the improvement made by the '623 patent. Opticurrent has provided no evidence or argument that the incremental value of the '623 is worth more than 3%.

Third, Opticurrent's reliance on Mr. Brunell's testimony that the value of a license could be between 2 and 5 percent is in direct contradiction to this Court's prior rulings and Opticurrent's prior representations regarding the use of Mr. Brunell's testimony. Specifically, before Mr. Brunell testified, PI objected to his providing testimony related to the QBar license, out of concern that Opticurrent was trying to use him as an undisclosed expert on license valuation. (*See* D.I. 259 at 2-4.) In responding to PI's objections, Counsel for Opticurrent specifically represented to this Court that they would not use his testimony in that way, stating: "Mr. Brunell is not being offered to say this is how I value it, this is what I did. . . . He's not going to say, I think that it's worth—he's not offering any expert advice." (Trial Tr. at 310:20-25.) Rather, Opticurrent represented that the purpose of Mr. Brunell's testimony was only to provide factual background: "[QBAR] informed his decision on whether this was a data point that he considered in deciding to invest and partner with Mr. Congdon. That's factual . . . we're not going to be offering—what Mr. Scherkenbach says—well, I reviewed the QBAR, and I did an analysis, and I think it's X. We're not doing that." (*Id.* at 311:4-11.) The Court then confirmed: "So he's not going to put a value on it? [Mr. Suder:] No. He's just going to say, I looked at it; it helped inform my decision to partner and acquire the patents. [The Court:] All right. If that's the limit, that's a factual historic fact."

Despite assuring the Court that Mr. Brunell's testimony would be used only for factual background—which assurance caused this Court to overrule PI's objections—Opticurrent is now relying on that testimony to do exactly what they said they would not: to put a value on the license. This Court should, thus, not consider Mr. Brunell's testimony on the question of license valuation.

### III. CONCLUSION

For the foregoing reasons, this Court should deny Opticurrent's motion for ongoing royalty. Instead, to the extent this Court elects to award any ongoing royalty, the royalty rate of that ongoing royalty should be no higher than the royalty rate for past damages.

Dated: April 1, 2019

FISH & RICHARDSON P.C.

By: */s/ Joseph Warden*
 Joseph Warden

Attorneys for Defendant
POWER INTEGRATIONS, INC.