Frank E. Scherkenbach (CA SBN 142549)
*scherkenbach@fr.com*
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210-1878
Tel: (617) 542-5070 ** Fax: (617) 542-8906

Michael R. Headley (CA SBN 220834)
*headley@fr.com*
Neil A. Warren (CA SBN 272770)
*warren@fr.com*
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Tel: (650) 839-5070 ** Fax: (650) 839-5071

John W. Thornburgh (CA SBN 154627)
*thornburgh@fr.com*
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Tel: (858) 678-5070 ** Fax: (858) 678-5099

Joseph Warden (Admitted *pro hac vice*)
*warden@fr.com*
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19899-1114
Tel: (302) 652-5070 ** Fax: (302) 652-0607

Attorneys for Defendant
POWER INTEGRATIONS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| OPTICURRENT, LLC,<br><br>Plaintiff,<br><br>v.<br><br>POWER INTEGRATIONS, INC.,<br><br>Defendants. | Case No. 3:17-cv-03597- EMC<br><br>**POWER INTEGRATIONS' POST-TRIAL MOTIONS**<br><br>DATE: May 9, 2019<br>TIME: 1:30 p.m.<br>JUDGE: Honorable Edward M. Chen |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 1

II. LEGAL STANDARDS .......... 2

III. ARGUMENT .......... 2

A. Opticurrent Failed to Prove Liability for More Than 6% of Power Integrations' Worldwide Sales .......... 3

B. The Royalty Rate Should Be Capped at Two Percent .......... 4

C. Opticurrent Failed to Prove Literal Infringement .......... 5

D. Opticurrent Failed to Prove Infringement Under the Doctrine of Equivalents .......... 6

E. Opticurrent Failed to Prove Direct Infringement .......... 8

F. PI Preserves Its Objections to the Court's Claim Constructions .......... 9

G. PI Preserves Its Objections to the Court's Jury Instructions .......... 9

H. Opticurrent Failed to Prove More Than Nominal Damages .......... 9

1. Opticurrent failed its burden of establishing that its only benchmark license, between Mr. Congdon and QBar, is economically comparable to the hypothetical negotiation. .......... 9

2. Opticurrent failed to apportion damages. .......... 11

3. Opticurrent improperly relied on the entire market value of the accused products. .......... 11

4. Opticurrent failed to prove the number of infringing units. .......... 12

IV. CONCLUSION .......... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen Engineering Corp. v. Bartell Industries, Inc.*, 299 F.3d 1336 (Fed. Cir. 2002)........ 7

*AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324 (Fed. Cir. 2015)........ 4

*Asyst Techs., Inc. v. Emtrak, Inc.*, 402 F.3d 1188 (Fed. Cir. 2005)........ 6

*Augme Techs., Inc. v. Yahoo! Inc.*, 755 F.3d 1326 (Fed. Cir. 2014)........ 7

*Bose Corp. v. JBL, Inc.*, 112 F. Supp. 2d 138 (D. Mass. 2000), *aff'd*, 274 F.3d 1354 (Fed. Cir. 2001), *cert. denied*, 537 U.S. 880 (2002) ........ 5

*Chiuminatta Concrete Concepts, Inc. v. Cardinal Industries, Inc.*, 145 F.3d 1303 (Fed. Cir. 1998)........ 8

*Commonwealth Sci. & Indus. Research Organization v. Cisco Sys.*, 809 F.3d 1295 (Fed. Cir. 2015)........ 10

*DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293 (Fed.Cir.2006) (*en banc*), and PI ........ 3

*Enplas Display Device Corp. v. Seoul Semiconductor Co.*, 909 F.3d 398 (Fed. Cir. 2018)........ 4

*Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201 (Fed. Cir. 2014)........ 10

*In re First Alliance Mortg. Co.*, 471 F.3d 977 (9th Cir. 2006)........ 2

*Fulhorst v. Toyota Motor Corp.*, 2003 WL 25827240 (E.D. Tex. 2003), *aff'd* 81 Fed. Appx. 309, 2003 WL 22701291 (Fed. Cir. 2003)........ 8

*Garretson v. Clark*, 111 U.S. 120 (1884)........ 11

*Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060 (2011)........ 3

**TABLE OF AUTHORITIES (cont'd.)**

**Page(s)**

*Harper v. City of Los Angeles*,
533 F.3d 1010 (9th Cir. 2008) ........ 2

*Johnson v. Paradise Valley Unified Sch. Dist.*,
251 F.3d 1222 (9th Cir. 2001) ........ 2

*Lucent Technologies Inc. v. Gateway, Inc.*,
509 F. Supp. 2d 912 (S.D. Cal. 2007) ........ 12

*Mars, Inc. v. Coin Acceptors, Inc.*,
527 F.3d 1359 (Fed. Cir. 2008) ........ 10

*Monsanto Co. v. Ralph*,
382 F.3d 1374 (Fed. Cir. 2004) ........ 2

*O2 Micro Intern. Ltd v. Monolithic Power Systems, Inc.*,
420 F. Supp. 2d 1070 (N.D. Cal. 2006) ........ 2

*Pall Corp. v. Micron Separations, Inc.*,
66 F.3d 1211 (Fed. Cir. 1995) ........ 5

*Panduit Corp. v. HellermannTyton Corp.*,
451 F.3d 819 (Fed. Cir. 2006) ........ 6, 7

*Power Integrations, Inc. v. Fairchild Semiconductor Intern., Inc.*,
711 F.3d 1348 (2013) ........ 3

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*,
242 F.3d 1337 (Fed. Cir. 2001) ........ 7

*Sipex Corp. v. Maxim Integrated Products, Inc.*,
2002 WL 1046699 (D. Mass. 2002) ........ 8

*VirnetX, Inc., v. Cisco Systems, Inc.*,
767 F.3d 1308 (Fed. Cir. 2014) ........ 11, 12

*Wallace v. City of San Diego*,
479 F.3d 616 (9th Cir. 2007) ........ 2

**Other Authorities**

Fed. R. Civ. P. 50(b) ........ 1

Fed. R. Civ. P. 59 ........ 1

# NOTICE OF MOTION

PLEASE TAKE NOTICE that on May 9, 2019, or as soon thereafter as the Court permits, this matter will be heard before the Honorable Edward M. Chen of the above-identified court, located at 450 Golden Gate Avenue, 17th Floor, Courtroom 5, San Francisco, California 94102. Defendant Power Integrations, Inc. will and hereby does move the Court, pursuant to Fed. R. Civ. P. 50(b) and 59, for judgment as a matter of law and/or new trial on the issues of worldwide damages, royalty rate, literal infringement, infringement under the doctrine of equivalents, direct infringement, claim construction, jury instructions, and damages.

## I. INTRODUCTION

Power Integrations' accused products are the *opposite* of what Opticurrent patented. PI's products use four-terminal switches, and use the fourth terminal to power the chip – exactly what Opticurrent told the Patent Office it sought to avoid. The Court should therefore enter judgment as a matter of law that PI does not infringe.

In addition, after the Court excluded Opticurrent's damages expert, Opticurrent's fallback damages case was even more unsound. Opticurrent violated almost every principle of damages law that the Federal Circuit has enunciated in recent years. It failed to apportion. It failed to introduce evidence of economic comparability. And it sought a royalty on PI's entire accused revenue without even attempting to show that the patented feature is the basis for demand. The Court should therefore enter judgment as a matter of law that Opticurrent failed to prove damages, just as it failed to prove infringement.

The verdict is legally unsound in other ways as well. Since the Jury found that PI did not induce infringement by others, the number of infringing units (and accompanying U.S. revenue to be used as a royalty base) must be reduced even if the Court finds liability. In addition, since the three percent rate in Opticurrent's benchmark license is for an exclusive license, the Jury's three percent royalty rate must be reduced to two percent (at most) for a non-exclusive license.

However, the Court need not reach these other issues if it rules that Opticurrent failed to prove either infringement or damages, as it should.

## II. LEGAL STANDARDS

The Court plays a "limited role in reviewing a jury's factual findings." *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001).[1] A motion for judgment as a matter of law "may be granted only when the evidence and its inferences, construed in the light most favorable to the non-moving party, permits only one reasonable conclusion as to the verdict." *O2 Micro Intern. Ltd v. Monolithic Power Systems, Inc.*, 420 F. Supp. 2d 1070, 1075 (N.D. Cal. 2006). "Where there is sufficient conflicting evidence, or if reasonable minds could differ over the verdict, judgment as a matter of law after the verdict is improper." *Id.*

In deciding a motion for new trial, a trial court must "draw all reasonable inferences in favor of the nonmoving party, keeping in mind that credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *In re First Alliance Mortg. Co.*, 471 F.3d 977, 991 (9th Cir. 2006). "A district court may not grant a new trial simply because it would have arrived at a different verdict." *Wallace v. City of San Diego*, 479 F.3d 616, 630 (9th Cir. 2007). If the amount is not "grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork," it must be upheld. *Harper v. City of Los Angeles*, 533 F.3d 1010, 1028 (9th Cir. 2008). The Court "affords substantial deference to the jury's findings of the appropriate amount of damages." *Id.*

## III. ARGUMENT

PI begins this brief with the two narrow issues that should be easiest to decide. Again, these issues will not matter if the Court holds, as it should, that PI does not infringe and that Opticurrent failed to prove damages. Those more fundamental issues are discussed later in the brief.

---

[1] The Federal Circuit applies regional circuit law to the standards for JMOL and new trial. *Monsanto Co. v. Ralph*, 382 F.3d 1374, 1384 (Fed. Cir. 2004).

### A. Opticurrent Failed to Prove Liability for More Than 6% of Power Integrations' Worldwide Sales

Inducement cannot be a basis for liability in this case because the Jury found that Power Integrations did not induce infringement. (Dkt. No. 285 at 2.) Therefore, liability in this case (if any) must be premised on direct infringement.[2]

As stated in the Court's jury instructions, direct infringement requires proof that "Power Integrations has made, used, sold, offered for sale, or imported *within the United States* a product covered by a claim of the '623 patent." (Tr. 820:25-826:3 (emphasis added).) *See also Power Integrations, Inc. v. Fairchild Semiconductor Intern., Inc.*, 711 F.3d 1348, 1371 (2013) ("It is axiomatic that U.S. patent law does not operate extraterritorially to prohibit infringement abroad.").

At trial, Opticurrent made no effort to prove that PI directly infringed in the United States. By contrast, PI established the following key facts, which went unchallenged and unrebutted:

(1) The accused products are manufactured outside the United States. (Tr. 778:17-22 (Sutherland).)

(2) In most cases, PI also sells the accused products outside the United States. (Tr. 778:23-779:3.)

(3) For the products sold outside the United States, no part of the sales process occurs in the United States. (Tr. 779:10-14.)

(4) No more than five or six percent of PI's sales occur in the United States. (Tr. 779:6-9.)

[2] In addition, induced infringement requires knowledge of the patent. *E.g.*, *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011). Because there was no evidence that PI was aware of the '623 patent before suit was filed (Tr. 528:14-20 (Walker)), Opticurrent conceded at trial that "[w]e're not claiming damages for inducement prior to filing suit." (Tr. 529:16-17.) Even after suit was filed, inducement requires specific intent to cause infringement, *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed.Cir.2006) (*en banc*), and PI introduced unrebutted evidence that it had a good faith belief in noninfringement. (*E.g.*, Tr. 530:3-531:16 (Walker).) Induced infringement also requires proof of direct infringement by third parties, and Opticurrent introduced no evidence related to the design of any allegedly infringing power supply manufactured by a third party and made, used, sold, offered for sale, or imported into the United States.

Given the above facts, PI's liability for *direct* infringement in this case is capped at 6% of its worldwide sales.[3] Opticurrent's argument that one-third of PI's products entered the United States was based on an *inducement* theory – namely, that PI induced its foreign customers to import into the United States, and that one-third of PI's products were imported into the U.S. *by others*. (*See* Tr. 766:9-767:22, 780:4-15, 782:22-783:5.) But this theory fails since the Jury found no inducement.

Given that PI's liability is capped at 6% of its worldwide sales, the number of infringing units (and thus the corresponding revenue to which any royalty is applied) must also be capped at 6% of PI's worldwide sales. "The royalty base for reasonable royalty damages cannot include activities that do not constitute patent infringement." *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324 (Fed. Cir. 2015) at 1343; *see also Enplas Display Device Corp. v. Seoul Semiconductor Co.*, 909 F.3d 398, 411-12 (Fed. Cir. 2018) (vacating damages award because royalty base included non-infringing activity).

Thus, the Jury's royalty base ($222,216,159.00) is unsustainable as a matter of law since it represents precisely one-third of PI's worldwide sales of the accused products. (Tr. 767:19-22; TX-210A (showing worldwide revenues of $666,648,477.) Therefore, the largest possible royalty base is 6% of $666,648,477 – which equals $39,998,908.62. Applying the Jury's three percent royalty, this means that damages are capped at $1,199,967.26. The Court should enter judgment as a matter of law so holding, if the Court leaves undisturbed the underling finding that PI's chips meet the limitations of the '623 patent (which it should not).

### B. The Royalty Rate Should Be Capped at Two Percent

The Jury's royalty rate (three percent)) is based on Mr. Congdon's license agreement with QBar. (*See* Tr. 855:2-3 (closing) ("The royalty rate is the QBAR license. It was 3 percent."); 437:3-9 (Brunell).) However, that three percent rate in the QBar license was for an *exclusive* license. (Tr. 437:10-12; TX-2.) The QBar license further specifies that "[i]In the event the license

[3] In fact, PI's U.S. sales of the accused products are even less than 6%. Should the Court affirm liability and order any sort of ongoing royalty, PI would demonstrate that the maximum future liability for direct sales in the U.S. would occupy a lower percentage of its overall sales.

granted hereunder is converted into a non-exclusive license in accordance with the foregoing, the percentage royalty on Net Sales shall be reduced to two percent (2.0 %)." (TX-2 at OPT000173.) Although Opticurrent failed to mention this fact to the Jury, it is critical because Opticurrent failed to introduce any evidence that the license resulting from the hypothetical negotiation in this case would be exclusive. *See Bose Corp. v. JBL, Inc.*, 112 F. Supp. 2d 138, 165 (D. Mass. 2000) (*Georgia-Pacific* factor three "looks at whether a license is, for example, exclusive or contains territory restrictions. Plaintiff claims this factor is not applicable. Defendants contend that this factor leads to a lower royalty rate because the license agreement would have been a simple non-exclusive exercise without any technology transfer or trademark rights. I agree with defendants."), *aff'd*, 274 F.3d 1354 (Fed. Cir. 2001), *cert. denied*, 537 U.S. 880 (2002); *see also* Tr. 830:18-21 (jury instruction in this case, reciting *Georgia-Pacific* factor three: "the nature and scope of the license, as exclusive or nonexclusive or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold").

Therefore, using Opticurrent's *only* evidence of a royalty rate – the QBar license – the *maximum* reasonable royalty rate is two percent.[4] Applying this rate to the largest possible royalty base (from the previous section) results in damages capped at $799,978.17. The Court should enter judgment as a matter of law so holding, if the Court leaves undisturbed the underling finding that PI's chips meet the limitations of the '623 patent (which it should not, as explained below).

**C. Opticurrent Failed to Prove Literal Infringement**

It is undisputed that PI's accused products have four terminals, while the asserted claim requires "only three terminals." (Tr. 402:2-5 (Zane); Tr. 559:1-4, 574:10-12 (Kung); TX-14 (TinySwitch III datasheet); TX-4 ('623 patent) at claim 1.) In addition, applying the Court's claim construction (Dkt. No. 58 at 13), PI introduced unrebutted evidence that its accused products

[4] Opticurrent argued in closing that the QBar rate should be increased to punish PI, but this is also wrong as a matter of law. *See* Tr. 825:23-24 (jury instructions) ("You should keep in mind that damages you award are meant to compensate Opticurrent and not to punish Power Integrations."); *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1223 (Fed. Cir. 1995) ("[T]he purpose of compensatory damages is not to punish the infringer, but to make the patentee whole."). Opticurrent is also wrong that the QBar rate should be increased because the '623 patent is an alleged improvement; as discussed later in this brief, this gets the lower value of "improvement patents" exactly backwards.

cannot be used unless the fourth pin is attached to an external capacitor that is necessary to supply power to the chip, which is charged during operation using an external bias winding (or a connection to the power supply output) in real-world power supplies. (*E.g.*, Tr. 578:4-20 (Kung); Tr. 650:16-23 (Bohannon); TX-14 (TinySwitch III datasheet) at PI_OPT0000232 ("When the MOSFET is on, the device operates from the energy stored in the bypass capacitor."); Tr. 634:5-8 (Kung); Bohannon testimony given 2/22/2019.)

Therefore, the Court should find that PI's accused products do not literally infringe as a matter of law.

**D. Opticurrent Failed to Prove Infringement Under the Doctrine of Equivalents**

The parties agree that the invention of the '623 patent involved moving from a four-terminal switch to a three-terminal switch. (*E.g.*, Tr. 397:8-13 (Zane).) The Court construed "a noninverting transistor switch having only three terminals" as "a noninverting transistor switch with three terminals that does not have a fourth terminal connected to a power supply." For the reasons discussed below, the Court should therefore find as a matter of law that PI does not infringe under the doctrine of equivalents. Three is not equivalent to four, and "a noninverting transistor switch with three terminals that <u>does not</u> have a fourth terminal connected to a power supply" (the Court's claim construction) cannot be equivalent to the exact opposite: a noninverting transistor switch with three terminals that <u>does</u> have a fourth terminal connected to a power supply. As Mr. Bohannon explained, "does" cannot be equivalent to "does not." (Tr. 691:6-9.)

Moreover, the "all elements rule" requires that *all* claim elements must be present even under the doctrine of equivalents. *Asyst Techs., Inc. v. Emtrak, Inc.*, 402 F.3d 1188, 1195 (Fed. Cir. 2005). In other words, the doctrine of equivalents did not permit Opticurrent to argue for "overall" equivalency; it was required to show an equivalent of each claimed element, including the presence of "a noninverting transistor switch having only three terminals." Opticurrent failed this burden, making judgment as a matter of law appropriate since application of the all elements rule and the determination of claim element vitiation are questions of law for the Court. *Panduit Corp. v. HellermannTyton Corp.*, 451 F.3d 819, 826 (Fed. Cir. 2006).

The "all elements rule" also precludes use of the doctrine of equivalents "if applying the doctrine would vitiate an entire claim limitation." *Id* at 830. Under this doctrine, "the concept of equivalency cannot embrace a structure that is specifically excluded from the scope of the claims." *Dolly, Inc. v. Spalding & Evenflo Companies*, Inc., 16 F.3d 394, 400 (Fed. Cir. 1994); *Augme Techs., Inc. v. Yahoo! Inc.*, 755 F.3d 1326, 1335 (Fed. Cir. 2014). Such an equivalency vitiates the claim's specific exclusions. *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1346 (Fed. Cir. 2001) (a metallic device cannot be the equivalent of the claimed "non-metallic" device). Here, arguing that the accused four-terminal switches were equivalent to the claimed three-terminal switches vitiated the express claim requirement of "only three terminals." (TX-4 ('623 patent) at claim 1.) Likewise, arguing that the accused four-terminal switches with a fourth terminal connected to a power supply were equivalent to the claimed three-terminal switches that lack a fourth terminal connected to a power supply vitiated the express claim requirements of the claim. (*Id.*)

In addition, Opticurrent's main equivalents argument involved comparing the <u>internal</u> capacitor in Mr. Congdon's breadboard (and associated drawing) with the <u>external</u> capacitor used by the accused products. (*E.g.*, Tr. 322:3-18 (Dr. Zane referring to Mr. Congdon's handwritten drawing, TX-32, to illustrate claim 1); Tr. 325:2-12 (Dr. Zane expressly using TX-32 to argue equivalents); Tr. 496:15-22 (Mr. Congdon testifying that his drawing depicts his breadboard TX-39); Tr. 499:11-17 (Mr. Congdon testifying that his breadboard has a capacitor).) Yet it is improper to compare the patentee's product with the accused product, as the Court recognized in its jury instructions; the law instead requires that the accused products be compared to the *asserted patent*. *Allen Engineering Corp. v. Bartell Industries, Inc.*, 299 F.3d 1336, 1351 (Fed. Cir. 2002) ("Infringement is determined by comparing the accused devices not with products made by the patentee but with the claims of the patent as properly construed."); *see also* Tr. 821:4-12 (jury instruction). The '623 patent does not mention capacitors and does not depict a capacitor in any of its drawings. (TX-4.) This is another reason to reject Opticurrent's doctrine of equivalents argument as a matter of law.

Finally, it is undisputed that Mr. Congdon was aware of capacitors as shown in his drawing and as included on his breadboard before he filed the '623 patent, yet he did not disclose this design in the patent. (*E.g.*, Tr. 498:34-499:17 (Congdon); TX-4 ('623 patent).) This too precludes use of the doctrine of equivalents in this case. *E.g.*, *Chiuminatta Concrete Concepts, Inc. v. Cardinal Industries, Inc.*, 145 F.3d 1303, 1310-1311 (Fed. Cir. 1998) ("given the prior knowledge of the technology asserted to be equivalent, it could readily have been disclosed in the patent," finding no equivalence); *Sipex Corp. v. Maxim Integrated Products, Inc.*, 2002 WL 1046699, *1 (D. Mass. 2002) ("equivalent infringement is not available for structures which were known to the patent applicant at the time of his application but were not disclosed in the patent"); *Fulhorst v. Toyota Motor Corp.*, 2003 WL 25827240, *20 (E.D. Tex. 2003) ("The quid pro quo for the patent is disclosure. If [the inventor] wishes to have it protected by patent, he must disclose it. If he chooses to keep it secret and not disclose it, there is no quid pro quo reason for the doctrine of equivalents, a rule of equity, to provide him patent protection by extending the reach of narrow claims he patented that do not cover the nondisclosed invention."), *aff'd* 81 Fed. Appx. 309, 2003 WL 22701291 (Fed. Cir. 2003).

The Court should therefore enter judgment as a matter of law of no infringement under the doctrine of equivalents.

**E. Opticurrent Failed to Prove Direct Infringement**

The asserted claim as construed requires a full power supply, not merely PI's accused power-supply controllers. For example, the Court's claim construction turns on how the terminals are connected externally ("does not have a fourth terminal connected to a power supply"). (Dkt. No. 58 at 13.) Similarly, the claimed "voltage stabilizer" was construed to mean "a circuit that maintains a constant voltage level" (*id.* at 17), and a power supply is required for there to be any voltage level in the chip at all. (*E.g.*, Tr. 284:25-286:19 (Zane).) The claim also requires current ("CMOS inverter interrupting the passing of current"), provided by the power supply. (TX-4 ('623 patent) at claim 1.) Because Opticurrent introduced no evidence that PI sells power supplies (as opposed to power supply controller chips used by others to make power supplies), the Court should find as a matter of law that PI does not directly infringe.

**F. PI Preserves Its Objections to the Court's Claim Constructions**

PI understands that the Court has reaffirmed Judge Gilstrap's claim constructions. (2/11/2019 Hearing Tr. at 33:12-14.) However, PI preserves its objection to these constructions and, for example, maintains its belief that these claim constructions are erroneous because the term "having only three terminals" does not allow for a fourth terminal, whether connected to a power supply or otherwise. Liability cannot properly be premised on Judge Gilstrap's erroneous claim constructions.

**G. PI Preserves Its Objections to the Court's Jury Instructions**

PI preserves its objections to the Court's jury instructions, as previously briefed (*see* Dkt. No. 245). In particular, PI objected to the Court's inducement and damages instructions, but since the Jury found no inducement that issue is not ripe. PI continues to object to the Court's instructions that permitted the Jury to award damages as a percentage of PI's accused revenue without a proper foundation, as discussed in the next section.

**H. Opticurrent Failed to Prove More Than Nominal Damages**

Although the Court permitted Opticurrent's damages case to go to the Jury over PI's objections – which PI hereby preserves – the Court should now enter judgment as a matter of law that Opticurrent failed to prove damages and that it is entitled to no more than nominal damages (such as the amount that Opticurrent paid to acquire the patent-in-suit).

**1. Opticurrent failed its burden of establishing that its only benchmark license, between Mr. Congdon and QBar, is economically comparable to the hypothetical negotiation.**

The accused products (a combination of switch and power supply controller) are not economically comparable to the licensed QBar switches alone. (*E.g.*, TX-2 at ¶¶ 2, 3 ("'QBAR Switch' means Three-Terminal Noninverting Transistor Switch as disclosed, claimed, and covered by U.S. Patent #5,134,323"; "The Licensor grants to the Licensee a worldwide exclusive license to make, to have made, to use, and to sell QBAR Switches…."); TX-11 at 3 ("TinySwitch-LT combines a high voltage power MOSFET switch with a power supply controller in one device.").) Mr. Brunell admitted he was not qualified to answer whether the '623 patent covers the entirety of the accused products (Tr. 455:7-10), and Dr. Zane (to whom Mr. Brunell deferred) did not discuss

this topic. Opticurrent introduced *no evidence to permit the Jury to scale a royalty rate appropriate for one type of product to a royalty appropriate to a very different product*.

In addition, PI is not economically comparable to QBar. QBar was not commercially successful. It sold some products but eventually shut down and was absorbed into Mr. Congdon's subsequent "Bit Parts" company, which ended up in debt. (Tr. 428:15-21, 429:2-5, 429:15-22, 438:3-8 (Brunell).) By contrast, Opticurrent's exhibit TX-210A shows that PI had revenues of over $600 million for the accused products. Opticurrent again introduced *no evidence to permit the Jury to scale a royalty rate appropriate for QBar to a royalty rate appropriate for PI.*

Mr. Congdon also owned QBar with his friend at the time he entered his license with QBar. (*E.g.*, Tr. 500:4-8, 511:14-512:5 (Congdon).) Such an arrangement is not economically comparable to the hypothetical negotiation. *E.g.*, *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1373 (Fed. Cir. 2008) ("The district court was plainly correct to conclude that the terms in an intracompany license agreement made to satisfy the requirements of the United Kingdom taxing authorities are likely to be very different from those resulting from a hypothetical negotiation between competitors."); *Telebuyer, LLC v. Amazon.com, Inc.* (previously filed as Dkt. No. 160-1) at 3 ("the intra-corporate license negotiations, which took place between a parent company and a subsidiary, involved markedly different considerations and bargaining positions than the hypothetical negotiation").

More generally, Opticurrent introduced no expert or other testimony to account for the differences between the QBar license and the hypothetical negotiation in the damages analysis. *Compare Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1228 (Fed. Cir. 2014) (permitting reliance on benchmark license because "expert testimony explain[ed] to the jury the need to discount reliance on a given license to account only for the value attributed to the licensed technology"); *Commonwealth Sci. & Indus. Research Organization v. Cisco Sys.*, 809 F.3d 1295, 1303 (Fed. Cir. 2015) (use of benchmark licenses for apportionment is only viable if the plaintiff "account[s] for differences in the technologies and economic circumstances of the contracting parties"). Simply applying the QBar rate to the present case, as Opticurrent sought to do through the argument of counsel, was unsound as a matter of law.

**2. Opticurrent failed to apportion damages.**

Despite PI's objections, which PI preserves, Opticurrent introduced no apportionment evidence. For example, it failed to apportion the value of the accused switch versus the "brains" in PI's accused controller chips, and failed to apportion the value of the claimed '623 patent "improvement" versus the three-terminal switch covered by the public domain '323 patent that is the admitted "core" of the claimed '623 patent. (*E.g.*, TX-11 at 3 ("TinySwitch-LT combines a high voltage power MOSFET switch with a power supply controller in one device."); Tr. 510:7-23 (Mr. Congdon testifying that the '323 patent is the core of the '623 patent and is dedicated to the public); Tr. 298:22-299:12 (Dr. Zane testifying that the '623 patent is an improvement of the '323 patent); Tr. 389:1-10 (Dr. Zane testifying that the '323 technology is "essential" whereas the '623 technology is merely "important or significant"); TX-4 ('623 patent) at 1:45-46 ("Noninverting transistor switches which comprise only three terminals are well known and widely used in the art."); *id.* at 2:67 – 3:5 (identifying the addition of the CMOS inverter to the "well known and widely used" transistor switch of the '323 patent).)

Opticurrent's failure to apportion renders its damages theory improper as a matter of law. *Garretson v. Clark*, 111 U.S. 120, 121 (1884) ("[w]hen a patent is for an *improvement*, and not for an entirely new machine or contrivance, the *patentee must show* in what particulars his improvement has added to the usefulness of the machine or contrivance. He *must separate* its results distinctly from those of the other parts, so that the benefits derived from it may be distinctly seen and appreciated." (emphasis added)); *VirnetX, Inc., v. Cisco Systems, Inc.*, 767 F.3d 1308, 1327-28 (Fed. Cir. 2014) ("[w]here the smallest salable unit is, in fact, a multi-component product containing several non-infringing features with no relation to the patented feature (as VirnetX claims it was here), the patentee must do more to estimate what portion of the value of that product is attributable to the patented technology. To hold otherwise would permit the entire market value exception to swallow the rule of apportionment.").

**3. Opticurrent improperly relied on the entire market value of the accused products.**

Despite PI's objections, which it hereby preserves, Opticurrent failed to lay a foundation for recovering a percentage of PI's entire revenue or entire average selling price, and should not

have been permitted to do so. (*See* Dkt. No. 268.) Opticurrent did not even attempt to prove that its patented technology is the basis for demand. Therefore, the Jury's damages award – a percentage of PI's entire accused revenue – is improper as a matter of law. *E.g.*, *VirnetX*, 767 F.3d at 1325-30 (vacating verdict where jury was permitted to consider entire revenue for accused product); *Lucent Technologies Inc. v. Gateway, Inc.*, 509 F. Supp. 2d 912, 938 (S.D. Cal. 2007) (granting JMOL on this issue).

**4. Opticurrent failed to prove the number of infringing units.**

Opticurrent did not introduce any evidence of an infringing power supply design imported into or made, used or sold in the United States. Opticurrent introduced no evidence that all power supplies used in the United States, or imported into the United States, that include an accused product are built in an allegedly infringing configuration. Accordingly, notwithstanding Mr. Sutherland's testimony regarding import rates for PI's chips in general, Opticurrent introduced no evidence from which the jury could reasonably conclude what percentage of power supplies made, used, sold or imported into the United States *have an infringing configuration*.

For all the above reasons, the Court should grant judgment as a matter of law that Opticurrent failed to prove damages and that Opticurrent's recovery should be limited to nominal damages.

## IV. CONCLUSION

For the foregoing reasons, Power Integrations respectfully requests the Court enter judgment as a matter of law in favor of PI or grant a new trial on the above issues.

Dated: April 1, 2019

FISH & RICHARDSON P.C.

By: */s/ Joseph Warden*
Joseph Warden

Attorneys for Defendant
POWER INTEGRATIONS, INC.